Willie Morris JONES, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–85–235.

Court of Criminal Appeals of Oklahoma.

Nov. 17, 1988.

Patti Palmer, Appellate Public Defender, Norman, for appellant.

Michael C. Turpen, Atty. Gen., Jean M. Leblanc, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BRETT, Presiding Judge:

The appellant, Willie Morris Jones, was tried by jury for the crime of Rape in the First Degree in violation of 21 O.S.Supp. 1983, § 1114 in Case No. CRF–84–2322 in the District Court of Oklahoma County. The jury returned a verdict of guilty and set punishment at seventy-five (75) years' imprisonment. The trial court sentenced the appellant in accordance with the jury's verdict. From this judgment and sentence, a timely appeal has been perfected to this Court.

On or about April 22, 1984, appellant took his six-year old daughter into his bedroom and had sexual intercourse with her. While S.B., the victim, and her two brothers, ages eight and four, lived with foster parents at the time, they were staying with their father, appellant, during this Easter holiday. Mr. Alfred Mbroh, a social worker who was familiar with these children as a result of having transported them to and from different locations, picked them up from appellant's home and returned them to their foster parents' house. He testified that on that day, S.B. did not behave in her normal, outgoing fashion. In fact, S.B. was so quiet that Mr. Mbroh asked her if she were sick. (Tr. 43)

At various times between the day S.B. returned from appellant's house and the day she was taken to the hospital, her foster mother noticed that upon returning home from school she would get off the school bus and run inside to the bathroom, holding her hand between her legs. On May 5, approximately fifteen days after the weekend with appellant, S.B.'s foster mother discovered blood on S.B.'s underwear, and she took S.B. to the hospital. At that time, S.B. told her that appellant was the cause of her condition. (Tr. 38) Dr. Purnell examined S.B. and determined from her condition that she had been sexually abused. (Tr. 4) He also diagnosed her as having a bladder infection.

In appellant's first assignment of error, he asserts that he was denied his Sixth Amendment right to the effective assistance of counsel. As evidence of deficient performance, appellant cites defense counsel's elicitations, during direct examination, of his prior arrests and his prior conviction which was over ten years old. Appellant argues that because neither his arrests nor his prior conviction could have been admitted into evidence against him, defense counsel's decision to elicit them constituted unreasonably poor performance.

It is well settled that to prevail on an ineffective assistance of counsel claim, the accused must demonstrate both a deficient performance and resulting prejudice. *Kimmelman v. Morrison,* 477 U.S. 365, 106 S.Ct. 2574, 2586, 91 L.Ed.2d 305 (1986); *Fisher v. State,* 736 P.2d 1003, 1011 (Okl. Cr.1987). In order to prove deficient performance, the claimant must show "that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound

strategy." *Kimmelman,* 477 U.S. at 381, 106 S.Ct. at 2586. To establish prejudice, "the claimant must show that there is a *reasonable probability* that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is one that undermines confidence in the outcome." *Fisher,* 736 P.2d at 1012. (emphasis added).

■ Cross-examination regarding arrests which have not culminated in convictions is precluded. *United States v. Dennis,* 625 F.2d 782, 798 (8th Cir.1980); *Hipp v. City of Tulsa,* 692 P.2d 566, 567 (Okl.Cr. 1984); *McDonald v. State,* 764 P.2d 202 (Okl.Cr.1988). Therefore, defense counsel's direct examination inquiry into appellant's prior arrests *could* be interpreted as an unnecessary attempt to "draw the sting": defense counsel did not derive any advantage from being the first to present appellant's prior arrests to the jury because in no event would this evidence have been available to the State for purposes of impeachment. However, defense counsel's strategy might also have been to convey to the jury that appellant was willing to admit that he had been in trouble with the State, and to emphasize that some of the charges once brought against appellant had been dropped. "There are countless ways to provide effective assistance in any given case," and here, defense counsel's actions "might be considered sound trial strategy." *Strickland v. Washington,* 466 U.S. 668, 689–90, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984); *cf. Aycox v. State,* 702 P.2d 1057, 1058 (Okl.Cr.1985). Furthermore, in light of the evidence that S.B. was molested, that she testified with certainty that appellant had been the perpetrator, and that people who knew her noticed a change in her attitude after she left appellant's house in April of 1984, we do not find a "reasonable probability" that the result of this trial would have been different had the evidence of appellant's prior arrests not been introduced. *Id.* 466 U.S. at 689, 104 S.Ct. at 2065. We therefore find that appellant was not denied effective assistance of counsel when his attorney elicited information about his prior arrests.

■ Neither was appellant denied effective assistance of counsel when his attorney inquired, during direct examination, into his prior manslaughter conviction which was over ten years old. Appellant argues that because 12 O.S.1981, § 2609(B) precludes the admission into evidence of a conviction which is over ten years old, his attorney's decision to introduce it constituted unreasonably poor performance. However, under section 2609(B), a conviction over ten years old *is* admissible if "the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect." We will never know whether the trial court would have allowed into evidence appellant's manslaughter conviction had the State attempted to admit it. Therefore, as with his elicitation of appellant's prior arrests, we conclude that defense counsel's inquiry into appellant's prior conviction over ten years old could have been sound trial strategy, and that in any event it did not affect the outcome of the trial. Appellant's first assignment of error is denied.

In appellant's second assignment of error, he claims that he was denied a fair trial because the jury improperly considered the possibility of parole in arriving at his sentence. Appellant offers two incidents at trial to support his contention. First, the jury sent a note to the judge which asked: "When does probation come up if sentence was? 1. life imprisonment; 2. 100 yrs.; 3. 50 yrs.; 4. 20 yrs.?" (Tr. 149; Court's Exhibit No. 1). The judge responded: "Your question cannot be answered by the Court. This is not a matter for you to consider." (Tr. 149) Second, the prosecutor recommended, during closing argument, that the jury give appellant life imprisonment.

■ The test used to determine the merits of a claim that the jury improperly considered the possibility of parole in arriving at a sentence, is whether, in light of the totality of closing argument, the prosecutor made such an unmistakable reference to the pardon and parole system as to preju-

dice the accused. *Camp v. State*, 664 P.2d 1052, 1054 (Okl.Cr.1983). While the prosecutor in the instant case did recommend life imprisonment, he never insinuated that such a sentence was necessary to prevent appellant from serving some minimal sentence. Thus, we do not believe that this was an attempt to instruct the jury on the possibility of parole. *Cf. Satterlee v. State*, 549 P.2d 104, 111 (Okl.Cr.1976).

█ Neither do we believe that the note which the jury sent to the judge indicated that they improperly considered the possibility of parole. The presumption is that jurors are true to their oaths and conscientiously observe their instructions and admonitions. *Hughes v. State of Oklahoma*, 426 F.Supp. 36 (W.D.Okl.1976). Because the judge specifically instructed the jury that they were not to consider parole, and because we find no evidence to the contrary, we shall presume that the possibility of parole did not enter into their deliberations. Therefore, this assignment of error is denied.

In appellant's third assignment of error, he claims that the prosecutor made improper and prejudicial comments which deprived him of the right to a fair and impartial trial. Appellant cites several instances of damaging prosecutorial misconduct: improper comment concerning the truthfulness of the victim's testimony; improper injection of personal opinion regarding the defendant's guilt; improper attack of defense counsel; improper recommendation of punishment; and, misstatement of testimony during closing argument. Appellant contends that the cumulative effect of these comments denied him a fair and impartial trial.

█ Appellant concedes that no contemporaneous objection accompanied any of the allegedly improper comments. The general rule of this Court is that when the prosecution makes an objectionable statement, it is incumbent upon defense counsel to call the statement to the attention of the trial court by making a timely objection. *Reid v. State*, 733 P.2d 1355 (Okl.Cr.1987). Failure to make such an objection waives all but fundamental error on appeal. *Van-*

*Woundenberg v. State*, 720 P.2d 328 (Okl. Cr.1986) *cert. denied*, 479 U.S. 956, 107 S.Ct. 447, 93 L.Ed.2d 395 (1986).

█ We have examined the comments complained of and find that only the following merit discussion. These comments, appellant asserts, are improper because the prosecutor expressed his personal opinion regarding appellant's guilt. During closing argument, the prosecutor stated:

> It's quite clear the victim ... was victimized by the defendant. The defendant went back there, raised up her gown, pulled down her panties and committed to perform sexual intercourse with her. That's what happened. (Tr. 89)

> It happened. The defendant is guilty. He did it. (Tr. 111)

This Court has set forth the permissible boundaries of comment in closing argument:

> The right of argument contemplates a liberal freedom of speech, and the range of discussion, illustration, and argumentation is wide. Counsel for both the State and the defendant have a right to discuss fully from their standpoint the evidence, and the inferences and deductions.

*Price v. State*, 518 P.2d 1281 (Okl.Cr.1974) quoting *Valenti v. State*, 392 P.2d 59 (Okl. Cr.1964). The American Bar Association recognizes that prosecutors may argue all reasonable inferences from the evidence in the record. A.B.A. Standards for Criminal Justice, § 3–5.8 (1980). However, it is "unprofessional conduct for the prosecutor to express his or her personal belief or opinion as to the truth or falsity of any testimony or evidence...." *Id.* at § 3–5.8(b). This type of problem can easily be avoided by attaching qualifiers to such statements such as "The evidence shows ..." or "I believe that the evidence clearly shows...."

In the instant case, the abovementioned statements were conclusory in nature. The prosecutor expressed his position without explaining that the statements were merely his beliefs. However strong the prosecuting attorney's belief may be of the prison-

er's guilt, he or she must remember the boundaries of argument set by this Court. While we deplore such statements, we cannot say, after considering the overwhelming evidence against appellant, that they affected the outcome of his trial. *Cervantes v. State*, 556 P.2d 622 (Okl.Cr.1976). There was ample testimony from the victim identifying appellant as the person who raped her. Further, the victim's testimony was corroborated by her attending pediatrician. Because the evidence of guilt was strong, we find that these statements did not determine the outcome. This assignment of error is therefore denied.

In appellant's fourth assignment of error, he claims that his sentence of seventy-five (75) years' imprisonment for first degree rape is so excessive that it constitutes cruel and unusual punishment. Specifically, he argues that the jury's prejudice toward him—due to improper prosecutorial comments—resulted in the imposition of an excessive sentence. We disagree.

■■■ The test for excessiveness is "whether [the sentence] shocks the conscience of the Court." *Wooten v. State*, 702 P.2d 59, 62 (Okl.Cr.1985). In determining whether the sentence is excessive, this Court will consider the entire record, including improper matter received without objection. *Freeman v. State*, 681 P.2d 84 (Okl.Cr.1984). And, we will modify the sentence if and when justice so requires. *Id.* at 86. However, we have already found that the improper comments, viewed either individually or collectively, did not prejudice the jury in their determination of guilt. We fail to see how these comments prejudiced the appellant in the sentencing phase, especially in light of the fact that the prosecutor requested life imprisonment and appellant received a prison term of seventy-five years. The sentence is clearly within the statutory limit and consistent with other sentences for rape. *See* 21 O.S.1981, § 1115; *Moore v. State*, 672 P.2d 1175 (Okl. Cr.1983) (499–year sentence for First Degree Rape held not excessive); *Dunnum v. State*, 646 P.2d 613 (Okl.Cr.1982) (99–year sentence for First Degree Rape held not

excessive). Therefore, this assignment of error is denied.

Appellant filed a pro se supplemental brief which included his fifth assignment of error. In this assignment, he challenges the sufficiency of the evidence upon which his guilty verdict was rendered. Specifically, he argues that the State failed to establish the essential element of sexual intercourse and that the testimony of the State's witnesses was highly contradictory and thus could not have established his guilt.

■■■ This Court follows the sufficiency of the evidence test enunciated in *Spuehler v. State*, 709 P.2d 202 (Okl.Cr.1985). The test is "whether, after reviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt." *Spuehler*, 709 P.2d at 203, 204 (emphasis in original). The evidence in the instant case supported the rational conclusion that appellant had sexual intercourse with a female under the age of sixteen who was not his wife. Appellant's fifth and final assignment of error is therefore denied. Finding no error warranting reversal or modification, the judgment and sentence is AFFIRMED.

BUSSEY, J., concurs in result.

PARKS, J., specially concurs.

PARKS, Judge, specially concurring:

I agree in the affirmance of appellant's conviction but wish to address the question of the inquiry into prior arrests during cross-examination. Under 12 O.S.1981, § 2608(B), specific instances of conduct may be the subject of inquiry as long as they meet certain requirements set out in the statute. Accordingly, while this Court continues to adhere to the general rule that arrests are inadmissible, the acts leading up to the arrest may be admissible under Section 2608(B). *See United States v. Dennis*, 625 F.2d 782, 798 (8th Cir.1980).

Application of this rationale to the instant case leads me to the conclusion that

defense counsel's actions in questioning appellant about his prior arrests "might be considered sound trial strategy." *Strickland v. Washington,* 466 U.S. 668, 689–90, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984). Since it was possible that the acts leading up to this prior arrest would be the subject of inquiry by the prosecutor, sound trial strategy possibly led defense counsel to initiate the inquiry into these acts so as to convince the jury of appellant's honesty.

Accordingly, I concur.