**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 2 2004**

**PATRICK FISHER**
Clerk

<u>PUBLISH</u>

# UNITED STATES COURT OF APPEALS

# TENTH CIRCUIT

---

ADRIAN DARRYLE GIPSON,

Petitioner - Appellee,

v.

LENORA JORDAN, Warden,

Respondent - Appellant.

No. 02-6261

---

**Appeal from the United States District Court**
**for the Western District of Oklahoma**
**(D.C. No. CIV-98-1509-M)**

---

William R. Holmes, Assistant Attorney General of Oklahoma (W. A. Drew Edmondson, Attorney General of Oklahoma, with him on the briefs), Oklahoma City, Oklahoma for the Respondent-Appellant.

Susan M. Otto, Federal Public Defender, Oklahoma City, Oklahoma for the Petitioner-Appellee.

---

Before **SEYMOUR**, and **LUCERO**, Circuit Judges, and **CASSELL**,* District Judge.

---

&ast; The Honorable Paul G. Cassell, United States District Judge for the District of Utah, sitting by designation.

**LUCERO** , Circuit Judge.

In this appeal, Lenora Jordan, Warden of the James Crabtree State Correctional Center in Helena, Oklahoma ("Oklahoma") seeks review of a conditional grant of habeas relief to Oklahoma state prisoner, Adrian Gipson. The sole issue on appeal is whether prosecutorial remarks before the sentencing jury which referenced Gipson's prior convictions impermissibly infringed upon his right to be free from double jeopardy. We exercise jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253, and **REVERSE** the grant of habeas relief.

## I

Gipson was tried by a jury for second-degree burglary. Because he had been previously convicted of two or more felony offenses, he was subject to punishment under Oklahoma's habitual offender provision for a minimum term of 20 years. (Jury Instructions at 12); see also Okla. Stat. tit. 21, § 51.1(B) (habitual offender provision). At trial, guilt and sentencing were consolidated—Gipson admitted to the charge, thus leaving the jury to decide only his sentence. The prosecutor informed the jury that Gipson had been previously convicted of six felony offenses: injury to a minor child, robbery by fear, second-degree burglary, burglary of an automobile, burglary of a vending machine, and uttering a forged

2

instrument. In closing, the prosecutor argued that Gipson has a propensity for recidivism and stated:

> I would submit to you, ladies and gentlemen, that at a minimum . . . . an appropriate sentence would be ten years for each of the [prior] convictions, including this one here today, which makes seven, so what I'm telling you is that I think an appropriate sentence, at least a minimum sentence, in this case, would be 70 years.

(R. at 185.) In instructing the jury, the district court clarified that:

> [t]he defendant has admitted that he has 6 previous convictions. You may not consider these previous convictions as proof of guilt in the case before you. You may consider the previous convictions for the purpose of determining the punishment if you find the defendant is guilty of the crime of Burglary Second Degree in the present case.

(Jury Instructions at 12.) The jury recommended seventy years imprisonment, and Gipson was sentenced accordingly.

On direct appeal to the Oklahoma Court of Criminal Appeals ("OCCA"), Gipson argued that his sentence was excessive. In the course of making that argument, he urged: "[i]n determining the excessiveness of the sentence, the Court should review possible improper influences upon the jury in assessing punishment"—namely, the prosecutor's reference to early release from the sentences for Gipson's prior convictions and the prosecutor's exhortation to the jury to sentence him to seventy years. (R. at 143, 144–45.) Gipson further stated that "[prosecutorial] comments which asked the jurors to punish Appellant ten years for each felony caused the jurors to violate Appellant's right to be free from

3

double jeopardy," and that "[t]he jury's imposition of a sentence ten times greater than the statutory maximum for the actual offense reflects the prejudice of the prosecutor's argument." (R. at 145.) In the face of Gipson's claim that, inter alia, the prosecutor's comments caused the jury to violate his double jeopardy rights, the OCCA affirmed Gipson's conviction and sentence, concluding that Gipson's sentence was "neither excessive nor the result of prosecutorial misconduct." Gipson v. Oklahoma, No. F-97-165, slip op. at 2 (Okla. Crim. App. Nov. 3, 1997).

Gipson filed a federal habeas petition pursuant to 28 U.S.C. § 2254, again challenging his sentence on double jeopardy grounds. The magistrate judge issued a report, revised after considering objections raised by Oklahoma, which recommended a conditional writ of habeas corpus granting relief on Gipson's double jeopardy claim. In July 2002, the district court issued an order adopting the magistrate's report. Oklahoma now appeals, arguing that the district court failed to accord proper deference to the OCCA's decision denying relief.

## II

As a threshold matter, we must determine the appropriate standard of review due to the OCCA's affirmance of Gipson's sentence. Because Gipson filed his petition for habeas relief after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), AEDPA's provisions

4

apply.  See Rogers v. Gibson, 173 F.3d 1278, 1282 n.1 (10th Cir. 1999) (citing Lindh v. Murphy, 521 U.S. 320 (1997)).  AEDPA provides that if a claim is adjudicated on the merits in state court, we will grant habeas relief to a petitioner only if he can establish that the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1), (2).

Under the "contrary to" clause, we grant relief only "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Court] has on a set of materially indistinguishable facts."  Williams v. Taylor, 529 U.S. 362, 413 (2000).  Under the "unreasonable application" clause, relief is provided only "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case."  Id.  Thus we may not issue a habeas writ simply because we conclude in our "independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  Id. at 411.

Conversely, if the state court did not decide a claim on the merits, and the

5

claim is not otherwise procedurally barred, we address the issue de novo and the § 2254(d)(1) deference requirement does not apply. See Aycox v. Lytle, 196 F.3d 1174, 1177 (10th Cir. 1999). Our standard of review therefore depends on whether the OCCA denied Gipson's double jeopardy claim on the merits. Where, as here, there is no indication suggesting that the state court did not reach the merits of a claim, we have held that a state court reaches a decision "on the merits" even when it fails either to mention the federal basis for the claim or cite any state or federal law in support of its conclusion. Id. at 1177.

In the instant case, in consideration of Gipson's argument that improper prosecutorial comments violated his double jeopardy rights, the OCCA found that Gipson's sentence was not the result of prosecutorial misconduct. Thus because the OCCA upheld Gipson's sentence in the face of his argument that prosecutorial misconduct violated his double jeopardy rights we treat the OCCA's decision as an "adjudication on the merits," and defer to its result, even though its reasoning is not expressly stated.[1] Aycox, 196 F.3d at 1177. In so doing, however, we

_____

[1] Although the dissent, in concluding otherwise, relies on the fact that the OCCA referenced only state cases, the Supreme Court in Early v. Packer, 537 U.S. 3, 8 (2002), made clear that under AEDPA there is no requirement that the state court cite or even be aware of Supreme Court cases "so long as neither the reasoning nor the result of the state-court decision contradicts them." Id. at 8. Moreover, unlike the Tenth Circuit cases cited by the dissent where we reasoned that a citation to a state court decision may indicate that the state court did not reach a federal claim, we would overreach in this instance to conclude that the

(continued...)

6

uphold the state court's summary decision unless our independent review of the record and pertinent federal law persuades us that its result contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented.

Id. at 1178. We stress that this "independent review" standard under Aycox does not constitute a de novo analysis of Gipson's claims. Instead, we defer to the OCCA's decision unless we conclude that its result—not its rationale—is "legally or factually unreasonable." Id.

Having determined the proper standard of review under AEDPA, we note that the federal circuits addressing similar claims have diverged in determining the standard for evaluating the prosecutorial misconduct at issue. Generally,

---

[1](...continued)
OCCA denied Gipson's prosecutorial misconduct claim on a state law ground unrelated to his double jeopardy claim. Such an argument would be compelling if, for example, the two state cases the OCCA cited specifically addressed Gipson's other claims of prosecutorial misconduct—i.e., comments that the prosecutor improperly informed the jury of possible early release or parole considerations—yet were silent as to double jeopardy. Cf. Duckett v. Mullin, 306 F.3d 982, 991 n.1 (10th Cir. 2002). Similarly, Gipson would have a stronger case for de novo review if he had made both a state and Fifth Amendment claim to be free from multiple punishments, and the OCCA had referenced only the state law claim. Cf. Ellis v. Mullin, 326 F.3d 1122, 1128 (10th Cir. 2002); Neill v. Gibson, 278 F.3d 1044, 1053–54 (10th Cir. 2001); Romano v. Gibson, 239 F.3d 1156, 1164–66 (10th Cir. 2001). To the contrary, the OCCA's holding that Gipson's sentence was not the result of prosecutorial misconduct, renders his federal claim—that prosecutorial misconduct caused the jury to violate his double jeopardy rights—meritless, "or otherwise result[s] in its denial." See Ellis, 326 F.3d at 1131 (Brorby, J., dissenting) (explaining that a state court decision citing only state law may nonetheless adjudicate the federal claim on the merits).

7

improper prosecutorial remarks will not warrant federal habeas relief unless the remark "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974). If, however, the challenged statements "effectively deprived the defendant of a specific constitutional right, a habeas claim may be established without requiring proof that the entire trial was thereby rendered fundamentally unfair," but rather only that the violation may not be "deemed harmless beyond a reasonable doubt." Mahorney v. Wallman, 917 F.2d 469, 472, 474 (10th Cir. 1990) (quotation omitted).

Thus, for example, the Fifth Circuit in Rogers v. Lynaugh, 848 F.2d 606, 610 (5th Cir. 1988), reasoned that where prosecutorial comments are "of such character that a jury would naturally and necessarily take [them] to be an exhortation to assess multiple punishments for the same offense" such misconduct implicates a "specific constitutional right." Id. at 611. Conversely, the Ninth and Third circuits have analyzed similar claims of prosecutorial misconduct as generalized due process claims, and, as a result, have proceeded to examine whether such comments deprived a defendant of his right to a fair trial. See, e.g., Beardslee v. Woodford, 327 F.3d 799, 821–22 (9th Cir. 2003) (applying a general standard of review to determine whether the trial was unfair when the prosecutor made comments suggesting that the jury punish defendant for a prior homicide);

8

Lesko v. Lehman, 925 F.2d 1527, 1545–46 (3d Cir. 1991) (applying a general standard to evaluate whether the trial was rendered fundamentally unfair when the prosecutor made comments instructing the jury that it had a "duty" to "even the score," in reference to defendant's prior murder conviction). However, as we will proceed to analyze below, because we cannot conclude that the OCCA's decision upholding Gipson's sentence was contrary to any clearly established law, we need not reach the question of which standard of review to apply to the claim of prosecutorial misconduct in the instant case.

### III

Under AEDPA, to warrant habeas relief, Gipson must show that the OCCA's determination, affirming Gipson's sentence and impliedly finding that the challenged prosecutorial remarks did not violate his right against double jeopardy, was "legally or factually unreasonable," see Aycox, 196 F.3d at 1178.

The Double Jeopardy Clause of the Fifth Amendment, U.S. Const. amend. V, prohibits the imposition of "multiple punishments for the same offense," North Carolina v. Pearce, 395 U.S. 711, 717 (1969), and is enforceable against the states through the Fourteenth Amendment. On appeal, Gipson relies by analogy on a Fifth Circuit case in which the court concluded that prosecutorial comments violated the Double Jeopardy Clause. See Rogers, 848 F.2d at 606. In Rogers,

the State introduced evidence of defendant's three prior felony convictions during the sentencing phase of the trial and made the following argument to the jury:

> This is his fourth final conviction for a felony offense. Robbery, robbery, burglary and now robbery again. I submit to you that each one of those felony offenses is worth at least 10 years. He received 12 on the first three. You put those 12 together and you come up with 36. And that is discounting what he has done since he got out of the penitentiary. But I submit to you that if you allocate just 10 years to each of those felony convictions you come up with 40.

Id. at 610. Although the State in Rogers argued that the prosecutor in his closing argument spoke primarily to Rogers' capacity for rehabilitation and the need for specific deterrence, the Fifth Circuit noted that the prosecutor "did not say . . . what the three prior offenses . . . implied about [defendant's] facility for rehabilitation," but rather, "the prior offenses themselves were said to be each worth ten years." Id. at 611. Given that the jury ultimately selected the forty-year term advocated by the prosecutor, id. at 612, the Rogers court reasoned that the jury had "naturally and necessarily" understood the prosecutor's argument as "an exhortation to assess multiple punishments for the same offense," id. at 611.

The alleged prosecutorial misconduct in the instant case, although borderline, is less straightforward than the misconduct presented in Rogers. Critically, prior to referencing Gipson's six prior convictions, and unlike the prosecutor in Rogers, the prosecutor addressed Gipson's facility for rehabilitation

10

and his propensity to commit future crimes in light of his prior convictions. He stated:

> Sending [Gipson] to prison for two to four years or five years hasn't deterred him, and I don't know if anything short of locking him up for as long a period of time as we can is going to deter him. So I'm telling you, ladies and gentlemen, that I think the only way to keep Adrian Gipson from committing a crime is to keep him locked up.

(R. at 185.)

Moreover, although we by no means commend the prosecutor's linking of a specific number of years to each of Gipson's prior crimes, dispositive to our analysis is the fact that unlike the court in Rogers (decided prior to the AEDPA amendments), we may not engage in a de novo review of the alleged prosecutorial misconduct in this case. Even were we inclined to grant relief on Gipson's double jeopardy claim, we must uphold the OCCA's determination unless we are persuaded that it "contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented." Aycox, 196 F.3d at 1178. Because we have no basis to infer that the OCCA acted unreasonably in its factual determinations, in the absence of a clearly established contrary Supreme Court holding at the time the OCCA issued its decision, we must defer to the OCCA's result. See Yarborough v. Alvarado, 541 U.S. __, 124 S.Ct. 2140, 2142 (2004).

11

There is no Supreme Court precedent precisely addressing prosecutorial misconduct in the context of recidivism statutes. However, the Supreme Court has explicitly articulated that enhanced punishment for recidivist conduct does not violate the Double Jeopardy Clause. See, e.g., Gryger v. Burke, 334 U.S. 728, 732 (1948). That is, in upholding recidivism statutes, the Court has explicitly articulated that an enhanced punishment imposed for a later offense based on earlier offenses "is not to be viewed as either a new jeopardy or additional penalty for the earlier crimes," but instead as "a stiffened penalty for the latest crime, which is considered to be an aggravated offense because a repetitive one." Gryger, 334 U.S. at 732. Similarly, in Witte v. United States, the Supreme Court explained that the "consideration of offender-specific information at sentencing . . . does not result in 'punishment' for [past] conduct." 515 U.S. 389, 400–01 (1995) (holding that the Double Jeopardy Clause was not violated when a defendant was convicted and sentenced for a crime when the conduct underlying that offense had been considered in determining the defendant's sentence for a previous conviction); see also Nichols v. United States, 511 U.S. 738, 747 (1994) (holding that criminal history provisions in the Sentencing Guidelines and state recidivist statutes "do not change the penalty imposed for the earlier conviction"); Moore v. Missouri, 159 U.S. 673, 677 (1895) (reasoning that recidivist statutes do not

12

punish the accused for previous offenses but rather "the punishment is for the last offense committed, and it is rendered more severe in consequence of the situation into which the party had previously brought himself") (quotation omitted).   Thus in the context of alleged prosecutorial misconduct, the Ninth Circuit has held that prosecutorial comments to a sentencing jury that referenced defendant's prior convictions do not deprive the defendant of a fair trial when they are presented to the jury through "the lens of an aggravating factor."  See Beardslee, 327 F.3d at 822–23 (concluding that although a prosecutor's references to defendant's prior homicide conviction "pushed the boundaries of permissible argument," such comments were unlikely to confuse the jury in light of the judge's instructions and other proper prosecutorial comments referring to the prior homicide as an aggravating circumstance).

With these precedents in mind, we conclude that the OCCA's decision is not contrary to clearly established federal law.  Lacking either countervailing Supreme Court precedent or an indication that the OCCA's determination of the facts in this case is manifestly unreasonable, we defer to the OCCA's affirmance of Gipson's sentence.  Accordingly, the district court's grant of conditional habeas relief is **REVERSED**.

CASSELL, District Judge sitting by designation, dissenting.

Because I believe the Oklahoma Criminal Court of Appeals did not reach the merits of Gipson's double jeopardy claim, I would apply a *de novo* standard of review to that claim. Reviewing that claim *de novo*, I agree with the District Court that Gipson's seventy-year sentence was obtained in violation of the prohibition against double jeopardy. Therefore, I respectfully dissent.

## I. *The Appropriate Standard of Review*

As the majority explains, Gipson's petition must be resolved under the standards provided by the Antiterrorism and Effective Death Penalty Act. Under AEDPA, a deferential standard of review applies to prisoners raising a "claim that was adjudicated on the merits in State court proceedings."[1] For such a claim, we will grant habeas relief to a petition only if the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[2] On the other hand, for a properly-presented claim that the state court failed to decide on the merits,

---

[1]  28 U.S.C. § 2254(d).

[2]  28 U.S.C. § 2254(d)(1), (2).

1

the deferential standard of review does not apply, and we will address the issue de novo.[3]

The majority asserts that the deferential standard of review applies here because "there is no indication suggesting that the state court did not reach the merits."[4] I disagree; as the District Court concluded below in adopting a carefully-reasoned opinion of the magistrate judge, the only indicators in the state court's opinion suggest the OCCA did not actually reach the merits.

A brief review of the procedural background will clarify the issues. Gipson raised a double jeopardy claim before the OCCA, along with other claims that his sentence was excessive and that the prosecutor had improperly referred to the possibility of early release on parole.[5] All of these separate claims were interwoven in a single "Proposition I" (apparently an unfortunate source of later confusion). In any event, the OCCA issued a summary, two-page opinion rejecting Gibson's claims, including Proposition I.[6] Regarding Proposition I, the OCCA's opinion stated only: "In reaching our decision we

---

[3] *See Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999).

[4] *Ante* at 6 (emphasis removed).

[5] R. at 141-144.

[6] *Gipson v. Oklahoma*, No. F-97-165, slip. op. (Okla. Crim. App. Nov. 3, 1997) (R. at 22-23).

2

find in Proposition I that Appellant's sentence was within statutory limits, and was neither excessive nor the result of prosecutorial misconduct."[7] The opinion also cited two Oklahoma cases concerning prosecutorial misconduct.[8]

Relying on this single sentence, the majority applies a deferential standard of review to the OCCA's decision because "there is no indication suggesting that the state court did not reach the merits of a claim."[9] I read the record differently. As the majority implicitly concedes, the OCCA never indicated that it was addressing the merits of Gipson's double jeopardy claim. Moreover, the text of the OCCA's terse opinion suggests the OCCA treated Gipson's double jeopardy claim solely as a prosecutorial misconduct claim. The critical sentence in the opinion explains that the OCCA rejected Gipson's Proposition I because his sentence "was within statutory limits, and was neither excessive nor the result of prosecutorial misconduct." Thus, the OCCA took pains to mention the issues of (1) the authorization for Gipson's sentence ("within statutory limits"), (2) the disproportionate nature of the sentence ("was [not] excessive"), and (3) the prosecutor's misconduct (not "the result of prosecutorial misconduct"). The natural inference from the

---

[7] *Id*. at 2 (R. at 22).

[8] *Id*. at 2 (citing *Applegate v. State*, 904 P.2d 130 (Okla. Crim. App. 1995); *Jones v. State*, 764 P.2d 914 (Okla. Crim. App. 1988)) (R. at 22).

[9] *Ante* at 6 (emphasis removed).

OCCA's failure to mention Gipson's double jeopardy claim is that the court did not reach it.

The distinction between a standard prosecutorial misconduct charge and Gipson's double jeopardy claim is important. Where a habeas petitioner's claim is based on prosecutorial misconduct the petitioner must demonstrate that the prosecutor's misconduct "made [the] trial so fundamentally unfair as to deny him due process."[10] However, "when the impropriety complained of effectively deprived the defendant of a specific constitutional right, a habeas claim may be established without requiring proof that the entire trial was thereby rendered fundamentally unfair."[11] Thus, in *Coleman v. Saffle*,[12] for example, this court applied a fundamental fairness standard to misstatements

---

[10] *Donnelly v. DeChristoforo*, 416 U.S. 637, 645 (1974).

[11] *Mahorney v. Wallman*, 917 F.2d 469, 472 (10th Cir. 1990) (citing *DeChristoforo*, 416 U.S. at 643); *see also Le v. Mullin*, 311 F.3d 1002, 1013 (10th Cir. 2002) ("Generally, a prosecutor's improper remarks require reversal of a state conviction only if the remarks so infected the trial with unfairness as to make the resulting conviction a denial of due process . . . Alternatively, if the alleged prosecutorial misconduct denied the petitioner a specific constitutional right (rather than the general due process right to a fair trial), a valid habeas corpus claim may be established without proof that the entire trial was rendered fundamentally unfair.") (citation omitted).

[12] 869 F.2d 1377 (10th Cir. 1989).

4

of a prosecutor because the statements did not "implicate other specific rights of the accused such as the right to counsel or the right to remain silent."[13]

While much of Gipson's brief to the OCCA focused on general prosecutorial misconduct, he also clearly alleged a violation of his right to be free from double jeopardy. Specifically, Gipson argued that "[t]he prosecutor was asking the jurors to re-punish Appellant on crimes for which Appellant already had served the time . . . . In essence, the comments which asked the jurors to punish Appellant ten years for each felony *caused the jurors to violate Appellant's right to be free from double jeopardy*, by subjecting him to multiple punishments for the same offense."[14] The fact that the OCCA did not address the distinction between general prosecutorial misconduct claims and those claims which implicate a specific constitutional right is further evidence that the OCCA did not reach the merits of Gipson's double jeopardy claim.

To avoid this conclusion, the state argues here that the OCCA's rejection of the prosecutorial misconduct claim was necessarily a rejection of the double jeopardy claim because "double jeopardy was the *only point* raised

---

[13] *Id*. at 1395. *See also Brinlee v. Crisp*, 608 F.2d 839 (10th Cir. 1979) (fundamental fairness standard not appropriate because Defendant's specific constitutional right to "presumption of innocence" was implicated).

[14] R. at 145 (emphasis added).

5

in support of the prosecutorial misconduct argument."[15]  The state's position

on this issue has, to put it charitably, evolved.  In the District Court, the state

argued initially that Gipson was procedurally barred from even pursuing a

double jeopardy claim because he never presented a double jeopardy claim to

the OCCA.[16]  In any event, the state's current position is simply untrue.  As the

District Court noted, Gipson "raised two different arguments relating to

prosecutorial misconduct, one of which implicated his double jeopardy rights

and one that did not."[17]  Gipson argued before the OCCA, for example, that the

prosecutor improperly told the jury of the possibility of early release and

improperly attempted to get the jury to take pardon and parole issues into

consideration.[18]  After putting forth these claims of prosecutorial misconduct

Gipson continued: "The prosecutor in this case *also* improperly argued . . . ."

Gipson then sets forth his double jeopardy argument and, as noted above,

plainly states that his "right to be free from double jeopardy" had been

---

[15]  Appt's Br. at 9 (emphasis in original).

[16]  *See* Supplemental Report and Recommendation (Nov. 8, 2001) (R. at 113).

[17]  *Id*. (R. at 114 n.4.).

[18]  R. at 144.

violated.[19]  Gipson's pleading may not have been artful in that his double jeopardy claim was raised in the context of general complaints about prosecutorial misconduct.  However, this only confirms my belief that the OCCA did not reach Gipson's double jeopardy claim, instead deciding only that the sentence was "not the result of prosecutorial misconduct."[20]  As this Court has noted before, "the language of [AEDPA] focuses on whether the '*claim*' was adjudicated, not whether the '*case*' was adjudicated."[21]  Gipson's double jeopardy claim does not appear to have been adjudicated.

This reading of the OCCA's opinion is further supported by the two case citations in it.  The first case, *Applegate v. State*,[22] involved prosecutorial vouching.  The court in that case concluded that "the prosecutor's comments were all fair comments on the evidence and not admitted in error."[23]  The second case cited by the OCCA, *Jones v. State*,[24] also involved vouching.  In that case the court found that the comments of the prosecutor, while improper,

---

[19]  R. at 145.

[20]  Supplemental Report and Recommendation (Nov. 8, 2001) (R. at 113).

[21]  *Le,* 311 F.3d at 1011 n.2.

[22] 904 P.2d 130 (Okla. Crim. App. 1995).

[23] *Id*. at 137.

[24] 764 P.2d 914 (Okla. Cr. App. 1988).

7

did not prejudice the jury.[25] As the District Court concluded below, "It is unclear from these citations whether the OCCA found the prosecutor's statements were 'fair statements' that did not in the first instance rise to the level of prosecutorial misconduct, or whether the OCCA found prosecutorial misconduct, but determined reversal was not warranted because the statements did not 'affect the outcome of the trial.'"[26]

Given this procedural history, the best that can be said is the OCCA *might* have decided Gipson's claim on the merits, but the specific indications in the opinion suggest that it did not. In such circumstances, this Circuit's cases hold that it is inappropriate to give AEDPA deference. It may well be that this Court's decisions on when a claim has been adjudicated on the merits are, in the words of Judge Brorby, "not . . . consistent" and "apparently conflict[ing].[27] But from the cases can be distilled the principle that "[w]e will grant deference to a state court decision under the Antiterrorism and Effective Death Penalty Act unless the decision provides some affirmative indication

---

[25] *Id*. at 916-17.

[26] Supplemental Report and Recommendation (Nov. 8, 2001) (R. at 115).

[27] *Ellis v. Mullin*, 326 F.3d 1122 (10th Cir. 2002) (Brorby, J., dissenting) (word order rearranged in first quotation).

8

that the state court did not consider the federal claim."[28]  The majority adopts this principle in stating that where "there is no indication suggesting that the state court did not reach the merits"[29] then AEDPA deference should apply.

My disagreement with the majority is that I believe there is an "affirmative indication" that the OCCA did not reach the double jeopardy claim on the merits.  The most persuasive affirmative indication that the OCCA failed to consider the double jeopardy claim is that court's mention of other claims and cases supporting those claims, without mention of the double jeopardy claim.  That alone is sufficient to take this case outside of AEDPA's deferential standard of review and subject it instead to de novo review.

This conclusion was reached on very similar facts in *Neill v. Gibson*.[30] There, this Court refused AEDPA deference in reviewing a federal claim on habeas where the decision of the state court was based solely on state law grounds.[31]  The petitioner's claim in *Neill* was whether in a capital case the trial court erred in refusing to instruct the jury that, if it failed to reach a unanimous decision as to punishment, under state law the judge would enter a

---

[28]  *Id.* (Brorby, J., dissenting).

[29]  *Ante* at 6 (emphasis removed).

[30]  278 F.3d 1044 (10th Cir. 2001), *cert. denied*, 537 U.S. 835 (2002).

[31]  *Id*. at 1053.

9

sentence of life imprisonment.[32] The prosecutor had misinformed the jury during closing arguments that the defendant would have to be retried.[33] Neill was convicted and sentenced to death and his conviction affirmed on direct appeal. Neill then sought post-conviction relief in the OCCA, raising both a state claim regarding failure to instruct the jury about the consequences of their failure to agree and a federal Eighth Amendment claim regarding the prosecutor's misstatement about the need for a retrial. In rejecting the petitioner's appeal, the OCCA stated that "this contention" had been rejected in two state cases.[34] The two cases cited by the OCCA addressed only the question of whether the court was required to instruct the jury about the result of their failing to reach a unanimous decision concerning punishment.[35] Neither case involved any Eighth Amendment question about misleading the jury regarding its role. This Court treated the citation of these two cases on state law issues as sufficient reason for determining that the OCCA had not adjudicated the Eighth Amendment claim on the merits.

---

[32] *Id*.

[33] *Id*. at 1053.

[34] *Id.*

[35] *Brogie v. State*, 695 P.2d 538, 547 (Okla. Crim. App. 1985); *Boltz v. State*, 806 P.2d 1117, 1124 (Okla. Crim. App. 1991), *cert. denied*, 502 U.S. 846 (1991).

This Court reached a similar result in *Ellis v. Mullin*.[36]  In that case, Ellis argued that the trial court had violated his federal due process rights by refusing to permit him to present evidence of schizophrenia.[37]  In support of this claim Ellis cited the Supreme Court case of *Chambers v. Mississippi*.[38]  The OCCA rejected his claim.  Reviewing his habeas petition this Court overturned the decision of the OCCA and found that Ellis had been denied his right to due process.  More important for this case is the fact that this Court did not apply the AEDPA standard of deference.  This Court noted that Ellis had raised a federal constitutional claim but that the OCCA "upheld the exclusion without any reference to Ellis's *Chambers* claim, holding only that the report properly was excluded under state law . . . Because the OCCA did not consider Ellis's federal constitutional claim, our review is *de novo*."[39]

This Court effectively reached the same conclusion in *Romano v. Gibson*.[40]  In that case, this court applied a *de novo* standard of review to a habeas claim where the petitioner had raised federal claims but the OCCA

---

[36]  326 F.3d 1122 (10th Cir. 2002).

[37]  *Id*. at 1128.

[38]  410 U.S. 284 (1973).

[39]  *Ellis*, 326 F.3d at 1128.

[40]  239 F.3d 1156 (10th Cir. 2001).

"addressed these claims only under state law."[41]  Thus, in *Neill v. Gibson*, *Ellis v. Mullin*, and *Romano v. Gibson*, the sole fact that the state court cited only state court opinions which did not relate to the federal question involved was taken to be an affirmative indication that the constitutional question was not reached on the merits.

That a state court decided an issue with reference only to state law was also taken as an affirmative indication that the merits of the federal issue were not reached in this Court's decision in *Knighton v. Mullin*.[42]  There, the OCCA "applied only state evidentiary rules" in determining whether evidence of petitioner's other crimes was properly introduced at trial.  On a habeas petition before us, this Court declined to apply AEDPA deference to a federal challenge to use of that evidence, concluding that "the Oklahoma appellate court did not specifically address it."[43]

This Court has also taken it as an affirmative indication that a federal issue was not addressed on the merits where the state court thoroughly addressed some of the petitioner's claims, but completely failed to address

---

[41]  *Id*. at 1166.

[42]  293 F.3d 1165 (10th Cir. 2002), *cert. denied*, 538 U.S. 930 (2003).

[43]  *Id*.

12

another. Thus, in *Duckett v. Mullin*,[44] this Court rejected AEDPA deference in a case where the state court had "meticulously addressed" each of the petitioner's 30 claims, except for the single claim at issue in the habeas petition which was "not resolve[d] either individually or generically."[45] Because the state court was so meticulous with respect to the other 29 claims, the Court stated that it could "only conclude that the OCCA did not render a decision on this claim"[46] While the state court in *Duckett* meticulously dealt with all of the claims but one, thus raising a strong suspicion that the remaining issue was not dealt with on the merits, the general proposition of that case – that a failure to address one issue while addressing others – also raises at least a suspicion in this case that the double jeopardy issue was not addressed on the merits by the OCCA.

Indeed, this Court's cases have apparently even found an affirmative indication that a claim was not reached where the state court did nothing more than summarily affirm. In *Smith v. Scott*,[47] this Court refused to grant deference under the AEDPA where the OCCA, without citation to law or

---

[44] 306 F.3d 982 (10th Cir. 2002), *cert. denied*, 538 U.S. 1004 (2003).

[45] *Id*. at 991 n.1.

[46] *Id*.

[47] 223 F.3d 1191 (10th Cir. 2000).

authority, summarily affirmed a lower court ruling against the petitioner on an ex post facto claim. This Court declined to give deferential review to such a decision, simply holding that the OCCA's decision "[did] not address [petitioner's] ex post facto claim 'on the merits.'"[48]

Under all these cases, we should conclude that the OCCA did not resolve Gipson's double jeopardy claim on the merits. Like *Neill* and *Ellis*, the cases cited by the OCCA here apparently did not bear on Gipson's double jeopardy claim, but rather on the general allegation of prosecutorial misconduct. Like *Knighton*, the OCCA did not specifically address Gipson's claim. Like *Duckett*, the OCCA specifically mentioned several of Gipson's claims, but not the claim he presses here. And finally, like *Smith*, we have essentially nothing more here than a summary affirmance. If we are to be faithful to these decisions, I do not see how we can treat the OCCA's decision as having been on the merits. Accordingly, I would find we have affirmative indications that the OCCA did not decide Gipson's double jeopardy claim on the merits and would not give the OCCA's decision deference under AEDPA.

Because I see affirmative indications that the OCCA did not reach the double jeopardy claim, I am not faced with the difficult question of what to do with only debatable indications. But were I faced with such circumstances, I

---

[48] *Id*. at 1193 n.1.

would be quite reluctant to presume an adjudication on the merits. To be sure, such a presumption draws some support from this Court's decision in *Aycox v. Lytle*,[49] which found an adjudication on the merits and gave deference to a state court opinion that articulated no reasoning. But at the same time, such a presumption seems at odds with such decisions as *Smith v. Scott*, where we proceeded to review an essentially summary affirmance de novo. Perhaps this Court will address en banc these apparently conflicting cases, as Judge Brorby has suggested.[50] But pending further clarification, I would err in the direction of finding that a summary opinion did not reach a claim on the merits. Such an approach seems more appropriate given the competing interests at stake. On the one hand, Gipson argues that the state sentenced him to seventy years in prison in contravention of his constitutional right to be free from double jeopardy. The prohibition against double jeopardy is "fundamental to our system of justice."[51] By comparison, the state's interest appears relatively modest. The state seeks only to have a deferential standard of review applied to petitioner's constitutional claim. If the state loses this argument, all that happens is that this Court applies its ordinary standard of review – in other

---

[49] 196 F.3d 1174 (10th Cir. 1999).

[50] *Ellis*, 326 F.3d at 1131 (Brorby, J., dissenting).

[51] *United States v. Dixon*, 509 U.S. 688, 728 (1993) (White J. concurring); *see also Benton v. Maryland*, 395 U.S. 784, 794 (1969).

15

words, this Court will determine whether the state court's decision on a matter of federal constitutional law was legally correct. The consequences of erroneous decision against the petitioner far outweigh the risks to the state. For these reasons, I believe it may be wise generally to require the state to shoulder the burden of proving that a federal claim was actually adjudicated on the merits in state court, rather than presuming otherwise. In this case, though, regardless of the precise placement of the burden, I am convinced that the OCCA did not adjudicate Gipson's claim on the merits and therefore that AEDPA deference is not appropriate.

## II. Merits of the Double Jeopardy Claim

Turning, then, to the merits of Gipson's claim, the Double Jeopardy Clause of the Constitution provides that no person shall be "subject for the same offence to be twice put in jeopardy of life or limb."[52] As the majority notes, improper prosecutorial comments do not merit habeas relief unless they so infected the trial as to render it "fundamentally unfair."[53] However, like the District Court below, I would hold that Gipson's specific constitutional right to be free from double jeopardy was implicated. Therefore, Gipson "need establish only the infringement of that particular constitutional right, and need

---

[52] U.S. CONST. AMEND. V.

[53] *Mahorney*, 917 F.2d at 472.

16

not show that the comment rendered the entire trial fundamentally unfair."[54]

As the Supreme Court has explained, "When specific guarantees of the Bill of Rights are involved, [the Court] has taken special care to assure that prosecutorial misconduct in no way impermissibly infringes them."[55]

Gipson's double jeopardy claim rests upon the following statement of the prosecutor to the jury:

> I would submit to you, ladies and gentlemen, that at a minimum, at a minimum, from the State's point of view, an appropriate sentence would be ten years for each of the convictions, including this one here today, which makes seven, so what I'm telling you is that I think an appropriate sentence, at least a minimum sentence, in this case, would be 70 years.[56]

The question before this Court, as the Fifth Circuit put it in a very similar case, is "whether the jury understood the State's contested argument viewed in context to be urging a [seventy]-year prison term for reasons of specific deterrence and rehabilitation or whether it understood that argument to be urging multiple punishments for the same offense."[57]   The majority frames the question the same way, noting that "an enhanced punishment imposed for a

---

[54]  *Pickens v. Gibson*, 206 F.3d 988, 997 (10th Cir. 2000).

[55]  *DeChristoforo*, 416 U.S. at 643

[56]  Supplemental Report and Recommendation (Nov. 8, 2001) (R. at 118).

[57]  *Rogers v. Lynaugh*, 848 F.2d 606, 611 (5th Cir. 1988).

17

later offense based on earlier offenses 'is not to be viewed as either a new jeopardy or additional penalty for earlier crimes,' but as 'a stiffened penalty for the latest crime, which is considered to be an aggravated offense because a repetitive one.'"[58]

In this case, I believe the prosecutor urged an additional penalty for earlier crimes, not a stiffened penalty for the latest crime. While it is true that the prosecutor in his closing remarks made reference to Gipson's prospects for recidivism, the prosecutor's remarks did not ask the jury to "enhance" Gipson's sentence based on his past crimes, but rather to give Gipson ten years for "this" crime and ten years for "*each* of the [other] convictions."[59]

The Fifth Circuit case of *Rogers v. Lynaugh*,[60] analyzed extensively by the court below, is persuasive on this point. In *Rogers*, during closing arguments at a sentencing hearing, the prosecutor referred to three prior felony convictions and urged the sentencing jury:

> This is his fourth and final conviction for a felony offense. Robbery, robbery, burglary and now robbery again. I submit to you that each one of those felony offenses is worth at least 10 years. He received 12 on the first three. You put those 12 together and you come up with 36. And that is discounting what he has done since he

---

[58] *Ante* at 12 (quoting *Gryger v. Burke*, 334 U.S. 728, 732 (1948).

[59] R. at 118 (emphasis added).

[60] 848 F.2d 606.

18

got out of the penitentiary. But I submit to you that if you allocate just 10 years to each of those felony convictions you come up with 40.[61]

Like the State in this case, the government in *Rogers* argued that the comments of the prosecutor were relevant to rehabilitation and deterrence and urged only a stiffened penalty for the crime before the jury. The Fifth Circuit rejected that contention and found that the prosecutor's statements were "an exhortation to assess multiple punishments for the same offense":

> The State's argument did not say that what the three prior offenses taken together implied about Rogers' facility for rehabilitation and his violent propensities warranted a forty-year prison term. Instead, the prior offenses themselves were said to be *each* worth ten years . . . . If the jury followed the State's urging, the jury allocated ten years for the instant offense, leaving thirty years of a forty-year prison term to be otherwise accounted for . . . . The State was thus necessarily urging the jury to assess a new punishment in addition to the earlier punishment (and thus multiple punishments) for each of the three prior offenses.[62]

The majority does not disagree with *Rogers* on the merits, but instead attempts to distinguish it. While agreeing that the improper statements here were "borderline,"[63] the majority ultimately concludes (under a deferential standard of review) that the statements were "less straightforward than the

---

[61] *Id*. at 610.

[62] *Id*.

[63] *Ante* at 10.

misconduct presented in *Rogers*" because the prosecutor here "addressed Gipson's facility for rehabilitation and his propensity to commit future crimes in light of his prior convictions."[64]  To be sure, the prosecutor here discussed these obvious issues during the course of an extended argument to the jury. However, the issue of rehabilitation and recidivism was also joined in Rogers; while the prosecutor did not address rehabilitation and deterrence, Rogers' counsel did,[65] thus making the jury aware of these considerations and seemingly placing the prosecutor's remarks in the context of a response to such concerns.  More important, the decisive factor in *Rogers* was that "the prior offenses themselves were said to be *each* worth ten years."[66]  Likewise, in this case the prosecutor told the jury that "an appropriate sentence would be ten years for *each* of the convictions, including this one here today."[67]  In other words, the prosecutor directly told the jury that an appropriate sentence for the crime for which Gipson was on trial was *ten* years, and the other sixty years was allocated at ten years for each of the other six prior convictions.  Thus, regardless of any other statements in the prosecutor's remarks about

---

[64]  *Ante* at 11.

[65]  *Rogers*, 848 U.S. at 612 n.25.

[66]  *Id*. at 611.

[67]  R. at 118 (emphasis added).

20

rehabilitation and deterrence, the prosecutor asked the jury to punish Gipson again for each of his six prior convictions. And the end result? Just as the jury did in *Rogers*, Gipson's jury gave the prosecutor exactly what he requested — ten years for each of the seven convictions.

Further, contrary to the State's argument, the fact that Gipson's prosecutor said that seventy years should be a "minimum" or "a starting point" is irrelevant.[68] This rhetorical flourish does not alter the fact that the prosecutor was asking the jury to punish Gipson for "each" of the prior offenses – the very things the Double Jeopardy Clause forbids. If the jurors wanted to punish Gipson even more than ten years for each of the prior offenses, the prosecutor was making clear that they should feel free to do so. But at the end of the day, the jury apparently followed the prosecutor's unconstitutional "starting point" analysis. As the District Court explained below, "the very fact of the availability of this broad range of punishment is, in part, what makes the finding of a double jeopardy violation inescapable. The jury, even given a wide degree of sentencing possibilities, chose the exact sentence recommended by the prosecutor."[69]

---

[68] *Id.*

[69] Report and Recommendation (Mar. 23, 2000) (R. at 46).

The Third Circuit case of *Lesko v. Lehman*[70] follows parallel reasoning. Lesko had previously pled guilty to one murder and was on trial for another. Sentencing was to be done separately. During his closing arguments for the second murder, the prosecutor told the jury, "I want you to remember this: We have a death penalty for a reason. Right now, the score is John Lesko . . . two, society nothing. When will it stop? When is it going to stop? Who is going to make it stop? That is your duty."[71] The Third Circuit found that the prosecutor's statements were "clearly improper":

> [T]he prosecutor's suggestion that the jury had a "duty" to even the "score," which stood at "John Lesko . . . two, Society nothing," invited the jury to impose the death sentence not only for the Miller murder, but also for the Nicholls murder — a crime to which Lesko had already pled guilty, and for which he would be separately sentenced. As the appellees point out, the sentencing jury could properly consider a prior murder conviction as an "aggravating circumstance" . . . . However, the jury had no authority to impose the death penalty for the Nicholls murder itself. The prosecutor's suggestion that the jury had a "duty" to do so was clearly improper.[72]

The Third Circuit then cited *Rogers v. Lynaugh* for the proposition that "an 'exhortation to assess multiple punishments for the same offense'" is a

---

[70] 925 F.2d 1527 (3rd Cir. 1991).

[71] *Id.* at 1540-41.

[72] *Id.* at 1545.

22

violation of the double jeopardy clause.[73]  The prosecutor's questions to the jury: "When is it going to stop?  Who is going to make it stop?," might appear to place his comments in the context of deterrence.  However, the Third Circuit held it was "clearly improper" for the prosecutor to ask the jury to punish Lesko again for a murder to which he had previously pled guilty.  In this case, the prosecutor did not implore the jury that it was their "duty" to punish Gipson for his previous convictions.  But the underlying principle is the same — like Lesko's jury, Gipson's jury was implored to punish Gipson again for his previous convictions.

One last case mentioned by the majority deserves brief discussion.  In the Ninth Circuit case of *Beardslee v. Woodford*,[74] the defendant was on trial for two murders.  During closing statements the prosecutor referred to a third murder on several occasions and told the jury that they were "chosen to determine what the punishment should be for the defendant who sits before you, responsible now for three murders."[75]  While noting that the prosecutor's comments "pushed the boundaries of permissible argument" the court rejected the defendant's habeas petition.  While the three murders were referred to as a

---

[73] *Id*. at 1545-46 (quoting *Rogers*, 848 F.2d at 611).

[74] 358 F.3d 560 (9th Cir. 2004).

[75] *Id*. at 584.

group, the prosecutor "differentiated between the California and Missouri killings, referred to the guilt phase jury's finding of guilt only with respect to the two murders, [and] correctly labeled the Griffin killing as an 'aggravating factor.'"[76] The Ninth Circuit also found it important that the jury instructions labeled the third murder an "aggravating circumstance" and that the defendant's attorney had also addressed the issue.[77] "In these circumstances," the court concluded, "it seems unlikely that the jury was confused about the proper role of the Missouri homicide."[78]

This case is far more like *Rogers* and *Lesko* than like *Beardslee*. *Beardslee* distinguished *Rogers* and *Lesko* because "the prosecutor's comments in these two cases linked more explicitly the jury's sentencing duty to the prior crimes themselves, rather than through the lens of an aggravating factor."[79] Here, there was no reference to prior convictions as a mere aggravating factor. The Ninth Circuit also found it important to note that in *Rogers* the jury "adopted exactly that sentence" which the prosecutor had recommended.[80]

---

[76] *Id*. at 584.

[77] *Id*. at 585.

[78] *Id*.

[79] *Id*.

[80] 358 F.3d at 585.

Here, too, the jury – given a wide range of choices – selected exactly the sentence urged by the prosecutor.

Finally, the majority states that while the prosecutor urged the jury to sentence Gipson to ten years for "each" of his prior convictions, these statements were "clarified"[81] by the jury instruction telling the jury they "may not consider the previous convictions as proof of guilt in this case before you" but that the jury could consider them "for the purpose of determining the punishment if you find the defendant is guilty of the crime" charged.[82] I do not believe this jury instruction corrected the prosecutor's comments for the simple reason the corrective instruction was never intended to cure any double jeopardy violation. The instruction merely told the jurors that they could not consider the previous convictions as proof of guilt – a moot point, since Gipson admitted guilt. More important, the instruction told the jurors that they *could* consider the previous convictions "for the purpose of determining punishment." Because the instruction did not tell the jury to avoid punishing Gipson twice for the same offense, if anything, it may have actually compounded the double jeopardy problem by highlighting the subject of the prosecutor's improper exhortation.

_____

[81]*Ante* at 3.

[82]R. at 46 (jury instructions at 12).

25

For these reasons, I would conclude (as did the District Court) that Gipson's right to be free from double jeopardy was violated when the prosecutor urged the jury to impose specific prison time for "each" of his prior convictions.

Finally, like the District Court below, I cannot conclude that the actual infringement of Gipson's double jeopardy rights was harmless error. "When a federal judge in a habeas proceeding is in grave doubt about whether a trial error of federal law had 'substantial and injurious effect or influence in determining the jury's verdict,' that error is not harmless."[83] I cannot say with any certainty what Gipson's jury would have done in Gipson's case had the prosecutor not made the comments at issue. But the prosecutor urged a seventy year sentence, and the jury, even after being told that the minimum sentence was twenty years and that there was no maximum sentence, imposed exactly the sentence the prosecutor sought. As the District Court below reasoned:

> The prosecutor's remarks . . . urged the jury to assess new punishments (and thus multiple punishments) for prior convictions as to which Petitioner had already received and served final sentences. It is not possible under these circumstances to conclude "beyond a reasonable doubt" that the jury did not sentence Petitioner at ten years for the conviction at issue and 10 years each for Petitioner's six

---

[83] *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).

26

prior felony convictions.  The 70-year sentence imposed in this case, therefore, is constitutionally invalid.[84]

I agree with the well-reasoned opinion below and would affirm.

---

[84] Report and Recommendation (Mar. 23, 2000) (R. at 46).