F I L E D
United States Court of Appeals
Tenth Circuit

AUG 22 2000

PATRICK FISHER
Clerk

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

STEVE A. SMITH,

       Petitioner - Appellant,

vs.

No. 00-6021

SONNY SCOTT,

       Respondent - Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
(D.C. No. 99-CV-898-M)

Submitted on the briefs:[*]

Steve A. Smith, pro se.

Steven E. Lohr, Assistant Attorney General, and W. A. Drew Edmondson, Attorney General, Oklahoma City, Oklahoma, for Respondent - Appellee.

Before **BRORBY**, **KELLY**, and **MURPHY**, Circuit Judges.

**KELLY**, Circuit Judge.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal.  See Fed. R. App. P. 34(a); 10th Cir. R. 34.1 (G).  The cause therefore is ordered submitted without oral argument.

Petitioner-appellant Steve Smith, an inmate appearing pro se, appeals the denial of his petition for habeas corpus, 28 U.S.C. § 2254. The magistrate judge recommended that the petition be denied. The district court adopted the recommendation and denied the petition. We granted a certificate of appealability to consider whether the Oklahoma Department of Corrections violated the Ex Post Facto Clause when it rescinded certain of Mr. Smith's earned time credits. We reverse and remand the case to the district court with instructions to grant the writ.[1]

## Discussion

In 1990, Mr. Smith was convicted in state court of Shooting with Intent to Kill and sentenced to twenty-five years imprisonment under the supervision of the Oklahoma Department of Corrections (ODOC). Under a program begun in 1988, Oklahoma operates a system of good time credits, whereby prisoners can reduce their term of imprisonment for good conduct. See Okla. Stat. Ann. tit. 57, § 138 (West Supp. 2000). The ODOC is statutorily authorized to develop "a written

---

[1]Mr. Smith exhausted this claim in state court when his application for a writ of mandamus was denied by the Oklahoma Court of Criminal Appeals. Smith v. Saffle, No. MA 99-0300 (Okla. Crim. App. Apr. 26, 1999). The OCCA summarily affirmed a district court ruling which had held that "[n]o prisoner has a right to . . . [an] earned credit level." Id. at 2. This decision does not address Mr. Smith's ex post facto claim "on the merits." 28 U.S.C. § 2254(d).

policy and procedure whereby inmates shall be assigned to one (1) of four (4) class levels . . . .", id. at § 138(B), and has done so in the form of OP-060213, an internal ODOC regulation. The class level to which an inmate is assigned determines the rate at which credits are earned (i.e. inmates at level 1 earn zero credits per month, while inmates at level 4 earn forty-four credits per month). Okla. Stat. Ann. tit. 57, § 138(D)(2). Each earned credit is equal to one day of incarceration. Id. at § 138(A).

From the date of his conviction until March 1992, Mr. Smith was classified at level 2 and received twenty-two good time credits per month. On March 17, 1992, corrections officials found Mr. Smith guilty of attempted escape and subsequently reduced him to level 1. See § 138(D)(1)(a) ("Class level 1 shall include . . . inmates on escape status . . . ."). Corrections officials later promoted Mr. Smith to level 3 on March 1, 1993 and to level 4 on June 1, 1993. Mr. Smith accumulated credits at these higher levels until January 5, 1999, when he received notification that 1,276 credits were being deducted from his file as the result of an ODOC time calculation audit.

When Mr. Smith complained, the ODOC informed him that its "Earned Credit Classes" regulation, OP-060213 (effective since November 1, 1988), specifically forbade inmates with an escape misconduct from being placed on levels 3 or 4 so long as "misconduct security points" were pending. The ODOC

maintained that Mr. Smith's misconduct security points would not expire until March 17, 2002, ten years after the date of the escape. Mr. Smith's assignment to those levels was simply a clerical error and the credits were being removed because Mr. Smith never had a right to them.

Mr. Smith alleges that this reduction was an ex post facto violation because the old version of OP-060213 did, in fact, allow for his promotion to levels 3 and 4. He points to the fact that the ODOC revised OP-060213 on April 9, 1997, and maintains that it was only by retroactively applying this amendment that the ODOC was able to revoke his earned credits. The ODOC responds that the 1997 revision was nothing more than a clarification of the policy which had always been in effect, and therefore, the ex post facto clause was not implicated.

Analysis

A district court's determination that a state law does not violate the ex post facto clause is a question of law we review de novo. See Lustgarden v. Gunter, 966 F.2d 552, 553 (10th Cir. 1992). Although the Constitution only prohibits the states from passing an ex post facto "Law," U.S. Const. art. I, § 10, an agency regulation which is legislative in nature is encompassed by this prohibition because a legislative body "cannot escape the Constitutional constraints on its power by delegating its lawmaking function to an agency." United States v. Bell,

991 F.2d 1445, 1450 (8th Cir. 1993) (holding that Federal Sentencing Guidelines were subject to ex post facto analysis); see also Akins v. Snow, 922 F.2d 1558, 1561 (11th Cir. 1991) ("Since the legislature delegated to the Board the power to enact rules and regulations concerning parole reconsideration, the rules or regulations enacted by the Board are subject to the ex post facto clause's prohibitions."); United States v. Saucedo, 950 F.2d 1508, 1515 n.12 (10th Cir. 1991), overruled on other grounds by Stinson v. United States, 508 U.S. 36 (1993) (holding that Ex Post Facto Clause applies to Sentencing Guidelines, even though action of independent agency and not legislature); but see Dominique v. Weld, 73 F.3d 1156, 1162 (1st Cir. 1996) (noting circuit split). The ODOC does not argue otherwise, and we treat the contested regulations as laws for the purpose of this opinion.

"To fall within the ex post facto prohibition, a law must be retrospective – that is, it must apply to events occurring before its enactment – and it must disadvantage the offender affected by it, by altering the definition of criminal conduct or increasing the punishment for the crime." Lynce v. Mathis, 519 U.S. 433, 441 (1997) (citations and internal quotations omitted); see also Weaver v. Graham, 450 U.S. 24, 29 (1981) (applying two part ex post facto test requiring proof of both retroactivity and disadvantage); Arnold v. Cody, 951 F.2d 280, 283 (10th Cir. 1991) (applying two part test in holding that Oklahoma emergency time

credits statute violates ex post facto clause). The ODOC does not challenge the fact that "the cancellation of [Mr. Smith's good time credits] had the effect of lengthening petitioner's period of incarceration" and therefore disadvantaged him. Lynce, 519 U.S. at 443; see also Weaver, 450 U.S. at 33 (holding that statute which "reduces the number of monthly gain-time credits available to an inmate" disadvantaged prisoner in violation of the Ex Post Facto Clause).

Rather, Respondent asserts that the 1997 amendment was not retroactive, because it was merely a clarification of the policy which OP-060213 had stated since 1988. The old version of OP-060213 stated, in relevant part:

> Misconduct Record – Any inmate with active misconduct security points will not be eligible for promotion to Class Levels 3 or 4 until the points expire.

OP-060213(III)(C)(2) (1988). The 1997 amendment changed this sentence of the old regulation to read as follows:

> Major Changes : Page six, Section III.C.2 has been revised as follows:
> 2. Misconduct Record – Any inmate with active custody assessment points in the Escape History or Disciplinary History sections of the "Custody Assessment/Facility Assignment Form" (DOC Form 060102A), or in the Escape History, Number of Disciplinary Convictions, or Most Serious Disciplinary Conviction sections of the "Custody Assessment Scale" (DOC Form 060103A), will not be eligible for promotion to Class Levels 3 or 4 until the points expire.

OP-060213(III)(C)(2) (1997).

The real question before us is whether the phrase "active misconduct security points" as used in the 1988 version of the regulation encompasses the term "active custody assessment points in the Escape History [section]" from the 1997 amendment. If the amendment was nothing more than "the correction of a misapplied existing law," then there is no retroactive application and the Ex Post Facto Clause is not implicated. Stephens v. Thomas, 19 F.3d 498, 500 (10th Cir. 1994). See also Metheny v. Hammonds, No. 99-10646, 2000 WL 913013, at *3 (11th Cir. July 7, 2000) ("A new regulation which just corrects an erroneous interpretation . . . by an agency of a clear pre-existing statute does not violate the Ex Post Facto Clause."); Saucedo, 950 F.2d at 1514 (same). However, if the 1997 amendment was more than a clarification of existing law, then the retroactive application to Mr. Smith was constitutionally invalid.

Mr. Smith argues that his escape misconduct generated two types of classification points: both "misconduct security points for one (1) year and for purposes of security assignment, escape history points for ten (10) years." Aplt. Br. at 8 n.3. Because the 1988 ODOC regulation only referred to misconduct security points, he was properly promoted back to Levels 3 and 4 when his points expired after one year. The ODOC responds that escape history points were included in the phrase "misconduct security points" and the 1997 amendment did nothing more than clarify this meaning. See Aplee. Br. at 6-7 ("[T]he previous

policy did not exclude escape history points. These were considered to be 'misconduct security points.'"). Thus, his promotion to the higher levels was a mistake under both the original and the revised regulations.

Under Chevron, U.S.A. v. Natural Resources Defense Council, 467 U.S. 837 (1984), we accord deference to the ODOC's current interpretation of its regulations. We accept the ODOC's contention that the current version of OP-060213 prohibits inmates with escape history points from being promoted to Levels 3 and 4. The ODOC's description of the 1997 amendment is also due deference, although it is not conclusive. See United States v. Mondaine, 956 F.2d 939, 942 (10th Cir. 1992). An agency's statement that an amendment is nothing more than a clarification "cannot be accepted as conclusive because such a result would enable the [agency] to make substantive changes in the guise of clarification." Saucedo, 950 F.2d at 1514-15 (citation and internal quotations omitted). See also Collins v. Youngblood, 497 U.S. 37, 46 (1990) (noting that the label which a legislature attaches to a law does not "thereby immunize it from scrutiny under the Ex Post Facto Clause."); United States v. Gerber, 24 F.3d 93, 97 (10th Cir. 1994) (rejecting agency's contention that change to sentencing guidelines was merely a clarification).

Despite any deference given to the ODOC, however, "[w]hether a state law is properly characterized as falling under the Ex Post Facto Clause . . . is a federal

question we determine for ourselves." Carmell v. Texas, 120 S. Ct. 1620, 1639 n.31 (2000). When a state law has been applied using different interpretations, the proper inquiry in an ex post facto challenge is whether the current interpretation was foreseeable. See Stephens, 19 F.3d at 500 ("[W]hen the current interpretation of a statute is foreseeable, there can be no Ex Post Facto Clause violation."). See also Bouie v. City of Columbia, 378 U.S. 347, 352-53 (1964) (applying foreseeability test as principle underlying ex post facto clause in due process analysis); Fultz v. Embry, 158 F.3d 1101, 1103 (10th Cir. 1998) (same); Lustgarden v. Gunter, 966 F.2d 552, 553-54 (10th Cir. 1992) (same); Devine v. New Mexico Dep't of Corrections, 866 F.2d 339, 342 (10th Cir. 1989) (same). This analysis comports with the Supreme Court's pronouncement in Weaver that "lack of fair notice" is a critical element in ex post facto relief. 450 U.S. at 30.

In this case, it is clear that OP-060213 does not contain the language "escape history points" and was not applied consistently within the ODOC. A July 28, 1998 internal memorandum from Jim Rabon, Coordinator of the ODOC Sentence Administration and Offender Records Department, reveals that prior to the 1997 amendment, ODOC case managers had applied the regulation according to "three prominent interpretations" – escapes generated either (1) no misconduct security points; (2) security points for only two years; or (3) security points for

only six months. [2]  R. doc. 10., unnamed att.  While we need not announce the proper interpretation, none of these comport with the interpretation now urged by the ODOC in this case.

We find that the 1997 amendment to OP-060213 was not foreseeable.  This decision is based upon several factors.  First, and most importantly, the language of the 1988 version of OP-060213 plainly lacks any indication that "escape

---

[2]In relevant part, the memo states:

Upon issuance of the [1997 amendment], I received several calls from case management stating they had not interpreted the part of the policy that dealt with escapes to mean that those with escape points could not be promoted to earned credit levels 3 or 4.  I determined there to be three prominent interpretations of the policy – 1) that escapes do not generate security points and therefore can be promoted to levels 3 or 4 at anytime, 2) that escape misconducts generated points for only two years in the same manner as serious Class X misconducts, and 3) that escape misconducts generated points for six months in the same manner as less serious Class X misconducts. . . .

If there were misunderstandings about this portion of the policy in the past, and clearly that is the case, then the blame should rest with me. . . . In the audits performed since the [1997 amendment] we have found and corrected approximately 35 cases where escape points were pending and the inmates were promoted to levels 3 or 4. . . . There are two reasons for the low number of cases.  Most escapees have other disciplinary problems that keep them at lower earned credit levels, and case management frequently promotes escapees to levels 3 or 4 by using the portion of the policy that allows for the points to be dropped after one year.

history points" are the same as "misconduct security points." The ODOC has not pointed to any other document, statute or regulation which would support its interpretation; instead, it would have us rely solely upon statements of various prison managers as to the meaning of the regulation. Second, for a period of at least five years, ODOC was applying the regulation under differing interpretations, inconsistent with the interpretation now advocated. The memorandum makes it clear that this inconsistency was not the isolated mistake of one or two case managers. There were different interpretations throughout ODOC, affecting a large number of prisoners on escape status over a course of several years. Mr. Smith could not be expected to understand or foresee the current interpretation of OP-060213 when ODOC's case managers – the officials entrusted with implementing the regulation – could not. See Knuck v. Wainwright , 759 F.2d 856, 858 (11th Cir. 1985) (holding that, in case of ambiguous statute, Florida Department of Corrections' first interpretation of statute was reasonable and, therefore, retrospective application of subsequent interpretation was ex post facto violation). Finally, the fact that the 1997 amendment was included under a section entitled " Major Changes " cuts against the ODOC's argument that the amendment was nothing more than a clarification.

Based upon these factors, we find that the 1997 amendment was a substantive change which was not foreseeable in 1992 when Mr. Smith was

- 11 -

charged with the escape misconduct. Its application to Mr. Smith was a violation of the Ex Post Facto Clause and due process notions of fair notice and the writ of habeas should be granted.

REVERSED and REMANDED for entry of an order in conformity with this opinion.