**F I L E D**
United States Court of Appeals
Tenth Circuit

**January 30, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

ROBERT LAWHEAD,

      Petitioner-Appellee,

v.

RON WARD,

      Respondent-Appellant.

No. 05-6249

(D.C. No. CIV-04-1331-L)
(W.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **TYMKOVICH,** and **BALDOCK,** Circuit Judges, and **FIGA,**[**] District Judge.

Respondent Ron Ward appeals the district court's order finding the Oklahoma Department of Corrections (ODOC) violated the Ex Post Facto clause when it applied a 1997 amendment to Oklahoma's prison regulations to reduce Petitioner Robert Lawhead's security class level, thereby hampering his ability to earn good time credits. Pursuant to the district court's ruling, Petitioner was awarded 1,254 good time credits, resulting in his early release from the ODOC in April of 2006. We have jurisdiction pursuant to 28 U.S.C. § 1291.

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 (eff. Dec. 1, 2006) and 10th Cir. R. 32.1 (eff. Jan. 1, 2007).

[**] Honorable Phillip S. Figa, District Judge, United States District Court for the District of Colorado.

Guided by our decision in Smith v. Scott, 223 F.3d 1191 (10th Cir. 2000), we affirm.[1]

I.

Pursuant to Oklahoma statutes, the number of earned credits an inmate receives is based on his classification in one of four security class levels. See 57 Okla. Stat. § 138. For instance, Class Level 4 prisoners earn forty-four credits per month toward early release while Class Level 1 prisoners earn zero credits. Class Levels 2 and 3 earn somewhere between zero and forty-four credits per month. Once a prisoner is assigned a particular classification, he is entitled to earn the specified number of credits for that classification. Id. Each earned credit is equal to one day of incarceration.

Petitioner, an Oklahoma inmate, entered the prison system in 1995. He escaped from a Texas detention center in April 1996. After recapture, the prison demoted Petitioner to earned credit Level 1. At the time of Petitioner's escape and recapture, the ODOC policy concerning prisoner misconduct read as follows: "Misconduct Record - Any inmate with active misconduct security points will not be eligible for promotion to Class Levels 3 or 4 until the points expire." OP-060213(III)(C)(2) (1988) ("1988 version"). In 1997, ODOC amended the policy to state:

> Any inmate with active custody assessment points in the Escape History or Disciplinary Hearing sections of the "Custody Assessment/Facility

_____

[1] After oral argument, where the panel learned of Petitioner's release from prison, the court ordered the parties to submit supplemental briefing addressing whether Respondent's appeal was moot. After considering the parties' supplemental briefing, the court finds the appeal is not moot. Should we reverse the district court's judgment, petitioner may be subject to additional jail time.

Assignment Form" . . . or in the Escape History, Number of Disciplinary Convictions, or Most Serious Disciplinary Conviction sections of the "Custody Assessment Scale" . . . will not be eligible for promotion to Class Levels 3 or 4 until the points expire . . . . If the level is reduced to 1 or 2, the inmate cannot be promoted to 3 or 4 until the points expire.

OP-060213(III)(C)(2) (1997) ("1997 Amendment"). Prior to the 1997 Amendment, prisoners who escaped were routinely promoted beyond Level 2 one year after the escape. After the 1997 Amendment, prisoners who escaped were denied promotion beyond Level 2 for ten years following the escape.

By November 1998, the prison promoted Petitioner to Level 3. When Petitioner sought promotion to Level 4, prison officials relied on the aforementioned 1997 Amendment to OP-060213 and explained Petitioner was ineligible for promotion past Level 2 because of his 1996 escape. A month later, prison officials demoted Petitioner to Level 2, and revoked the credits he earned while at Level 3 (seventy-seven credits in total). The notation accompanying the demotion stated Petitioner could not "go to L3 due to escape." By May 2001, Petitioner regained Class Level 3 status and remained at that level for approximately three months. Then, the prison again demoted Petitioner to Level 2 and deducted the thirty-three credits he earned while at Level 3. Again, prison officials based the demotion and deduction of earned credits on Petitioner's 1996 escape and application of the 1997 Amendment.

In 2003, in response to our decision in Smith v. Scott, 223 F.3d at 1191, the prison reinstated Petitioner's seventy-seven credits it revoked in 1998 and thirty-three credits it revoked in 2001. Prison officials did not credit Petitioner for earned credits he would have

3

received had he remained at Level 3 or 4 status during the entire course of the years 1998 to 2003. At issue in this appeal are the credits Petitioner would have earned after 1998, absent application of the 1997 Amendment.

Petitioner filed suit pursuant to 28 U.S.C. § 2254 seeking good time credits he would have earned absent his demotion to Level 2 in 1998 and again in 2001.[2] The district court referred the matter to the magistrate judge for a Report and Recommendation (R&R). In the R&R, which the district court ultimately adopted, the magistrate judge relied on Smith, and decided application of the 1997 Amendment to reduce Petitioner's security class level constituted a violation of the Ex Post Facto clause. See U.S. Const. art. I, § 10. In Smith, we considered whether the ODOC committed an ex post facto violation when it applied the 1997 Amendment to revoke good time credits Smith earned after a 1992 attempted escape. 223 F.3d at 1194-96. We compared the 1988 version of OP-060213, which was in place at the time of Smith's attempted escape and the 1997 Amendment. We concluded that when Smith attempted escape in 1992 he could not reasonably foresee his punishment would be consistent with the changes contained in the 1997 Amendment. Id. at 1196. Thus, we concluded, prison officials violated the Ex Post Facto clause when they applied the 1997 Amendment to revoke credits Smith earned after his escape attempt. Id. In so concluding, the court rejected ODOC's argument that the 1997 Amendment simply clarified the 1988 version of OP-060213. Id.

---

[2] The court converted the petition to a 28 U.S.C. § 2241 petition because Petitioner challenged the execution of his sentence rather than the validity of the sentence.

Although Smith involved revocation of good time credits, the magistrate judge extended Smith's logic and ruled the prison's application of the 1997 Amendment to demote Petitioner's security class level based on his 1996 escape violated the Ex Post Facto clause. After the court issued the R&R, the parties entered a joint stipulation as to the number of credits Petitioner would have received between December of 1998 and May of 2005 absent application of the 1997 Amendment. Based on those stipulations, the magistrate judge recommended the district court order Respondent to award Petitioner an additional 1,254 credits for purposes of computing of his release date. The district court also adopted this recommendation.

II.

The district court's determination that a state law violates the Ex Post Facto clause is a question of law we review de novo. See Lustgarden v. Gunter, 966 F.2d 552, 553 (10th Cir. 1992). "The Ex Post Facto Clause prohibits states from passing laws that retroactively alter the definition of crimes or increase the punishment for criminal acts." Boutwell v. Keating, 399 F.3d 1203, 1215 (10th Cir. 2005). A law violates the Ex Post Facto Clause if the law (1) applies to events occurring before it was enacted, and (2) disadvantages the petitioner by changing the definition of criminal conduct or increasing the sentence thereof. Smith, 223 F.3d at 1194 (citing Lynce v. Mathis, 519 U.S. 433, 441 (1997)).

Respondent argues the district court made several errors in deciding ODOC's reliance on the 1997 Amendment violated the Ex Post Facto clause. Respondent asserts prison regulations are not "laws" for purposes of the Ex Post Facto clause; ODOC has unfettered

5

discretion in administering prison regulations; and the 1997 Amendment was a "management adjustment" which the Prison Director made to bring uniformity to the previous version of OP-060213. According to Respondent, the 1997 Amendment created only a "speculative and attenuated" possibility of increasing Petitioner's punishment, and therefore is not subject to ex post facto scrutiny.

Frankly, we fail to see how this case differs substantially from Smith, which settles several of Respondent's claims of error. First, Smith treated the exact regulation at issue in this case as a "law" for purposes of the Ex Post Facto clause. Although the ODOC did not argue OP-060213 was not a law in Smith, the Smith panel's analysis makes plain its treatment of OP-060213 as a "law" was essential to its ruling in favor of Smith. As we noted in Smith, ex post facto prohibitions apply not only to legislation but to an agency's exercise of delegated authority to make and enforce rules. Smith, 223 F.3d at 1193-94. We explained, "[a]lthough the Constitution only prohibits the states from passing an ex post facto 'Law,' . . . an agency regulation which is legislative in nature is encompassed by this prohibition because a legislative body cannot escape the Constitutional constraints on its power by delegating its lawmaking function to an agency." Id. at 1193-94 (citations and quotations omitted). We are bound by Smith's treatment of OP-060213 as a "law."

Smith also eliminates Respondent's argument that the 1997 Amendment was an exercise of ODOC's discretion -- a "management adjustment" used to bring uniformity to OP-060213's application. First, we note Respondent's demotion in security class levels was not an act of discretion on the part of ODOC, but instead a mandatory reduction which the

1997 Amendment required.  See Wilson v. Jones, 430 F.3d 1113, 1121-22 (10th Cir. 2005) (finding petitioner's improper misconduct conviction infringed a liberty interest because pursuant to Oklahoma prison regulations his credit earning class was mandatorily reduced, a consequence Oklahoma prison officials had no discretion to alter).[3]  More importantly, Smith, in no uncertain terms, rejected ODOC's argument that the 1997 Amendment was a "clarification" of the 1988 version.  See Smith, 223 F.3d at 1195.  Respondent's use of the term "management adjustment" instead of "clarification" is simply semantics.  Smith clearly held the 1997 Amendment to OP-060213 was an unforeseeable change in the law.  See id. at 1196.  Consequently, neither Smith nor Petitioner in this case could have foreseen application of the 1997 Amendment when they attempted escape in 1992 and 1996 respectively.[4]

_____

[3]Cf. Chambers v. Colorado Dep't of Corrections, 205 F.3d 1237, 1242 (10th Cir. 2000) (prisoner has no vested right in a particular parole date or parole hearing date when prison officials maintain discretion to alter good time credits earned for participation in a sex offender program).

[4]Invoking the Supreme Court's decision in Sandin v. Conner, 515 U.S. 472 (1995), Respondent argues the actions by prison officials are shielded from judicial scrutiny. Respondent's reliance on Sandin is misplaced.  In Sandin, the Supreme Court concluded a prisoner is only entitled to due process if he is subjected to conditions or regulations that "impose atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," or disciplinary actions that "inevitably affect the duration of his sentence."  Id. at 487.  Even if Sandin applies to this case, application of 1997 Amendment "inevitably affected" the duration of Petitioner's sentence by mandatorily reducing his earning class level.  In Wilson v. Jones, 430 F.3d 1113, 1120 (10th Cir. 2005), we held that where Oklahoma's prison regulations required an automatic demotion in petitioner's earned credit level class, petitioner's liberty interests were implicated because a "direct, unattenuated impact on the duration of a prisoner's confinement" occurred.

7

Finally, Respondent argues the 1997 Amendment created only a "speculative and attenuated possibility" of increasing Petitioner's punishment. See California DOC v. Morales, 514 U.S. 499, 509 (1995) (retroactive changes in the law which produce only a "speculative and attenuated possibility" of increasing the measure of punishment for the covered crimes does not pose an ex post facto violation). As we have noted, "the controlling inquiry is not whether the law is retroactive, but 'whether it produces a sufficient risk of increasing the measure of punishment attached to the covered crimes.'" Henderson v. Scott, 260 F.3d 1213, 1216 (10th Cir. 2001) (quoting Morales, 514 U.S. at 509) (some internal quotation marks and citation omitted). When a law "'does not by its own terms show a significant risk'" of increased punishment, a prisoner "'must demonstrate, by evidence drawn from the rule's practical implementation . . . that its retroactive application will result in a longer period of incarceration than under the earlier rule.'" Id. (quoting Garner v. Jones, 529 U.S. 244, 255 (2000)). Here, we need not engage in speculation to determine application of the 1997 Amendment would increase the measure of punishment for Petitioner's crimes. The parties stipulated, with precision, to the exact number of credits Petitioner would have received absent application of the 1997 Amendment. In doing so, the parties took into consideration any misconduct on Petitioner's part during the course of 1998 to 2005 and requisite security class level demotions. Accordingly, we reject Respondent's argument that to rule in favor of Petitioner is to engage in impermissible speculation.

8

AFFIRMED.

Entered for the Court,

Bobby R. Baldock
United States Circuit Judge