O’BRIEN, J.,
dissenting.
Henderson is long on allegations and arguments, but short on proofs. It is his burden to support his claims. Since he failed to do so I respectfully dissent.
The Department argues the policies regarding Henderson’s eligibility for Level 3 were not materially modified from the time of his battery on staff and therefore were “nothing more than the correction of a misapplied existing law” which did not implicate ex post facto considerations. Indeed, Henderson’s assault on a staff member was, at the time it occurred, labeled a Class A offense, among the most serious transgressions. Over time it has been relabeled (now Class X) but has never lost its status as most serious. The question is *563 whether the direct and probable consequences of the Department’s policy changes have improperly and detrimentally impacted Henderson’s prison time by reducing his eligibility for promotion and, derivatively, ability to earn good time.
The policy on an inmate’s ability to progress to Level 8 or 4 changed over the years. In a nutshell, with the exception of the 2008 policy, the changes were procedural. The 1994 policy prevented a promotion to Level 3 or 4 if an inmate had active misconduct security points but provided such points may be dropped after one year (and once dropped, not be reactivated). It did not specify a particular method for dropping the points or documenting the event. In April 1997 the policy changed slightly, requiring dropped points to be noted on the “Adjustment Review.” [1] In all other material respects (as they impact this case) the policy was unchanged. In March 2000, the policy again changed—permitting points to be dropped (waived)[2] “with approval of the facility head.” No other material changes affecting this case were made. In summary, the changes required documentation of dropped points (1997) and specified the individual with discretion to drop points (2000). In 2003, the policies deleted any reference to the Department officials’ discretion to drop misconduct security points for a conviction prior to that date.[3]
It is unclear whether the district court determined the policies themselves were not subject to ex post facto analysis, or whether it accepted the Department’s argument that the policies had not materially changed. The policies are subject to an ex post facto inquiry. The question is whether the Department’s policy changes created a significant risk of increasing the penalty imposed on Henderson in 1994 for battery on staff. To prevail, Henderson must demonstrate either “the [policy], ... by its own terms show[s] a significant risk” of increasing his punishment, or by presenting “evidence drawn from the [policy’s] practical implementation by the agency charged with exercising discretion, that its retroactive application will result in a longer period of incarceration than under the earlier [policy].” Garner v. Jones, 529 U.S. 244, 255, 120 S.Ct. 1362, 146 L.Ed.2d 236 (2000).
As stated, the policies’ terms merely changed the procedure for dropping points. Those changes are, of themselves, incapable of impacting the time Henderson remains in prison. See id. at 250, 120 S.Ct. 1362. Henderson needs a better argument. He must demonstrate prison authorities would likely have exercised their discretion to waive the promotion limitation in his case but for the 1997 and subsequent procedural changes. To that end he argues his misconduct security points were, in fact, dropped.
Relying solely on his conelusory assertions, Henderson claims between 1994 and 1997 it was prison policy to routinely drop misconduct security points after one year. However, he had no Level 3 or 4 promotions during that time. It is difficult to reconcile his failure of promotion with his claim of a routine policy to drop points. There may be an explanation, but the record is bai'e. Another factor is more tell *564 ing, the Department provided an affidavit of William Knowles, Classification Coordinator for the Davis Correctional Facility, stating the prison had no such policy.[4] Henderson has not rebutted with admissible evidence; his argument fails for lack of evidentiary support.
Henderson was promoted to and demoted from Level 3 several times between July 1997 (after the effective date of the April 1997 policy changes) and October 8, 2001. He claims an entitlement to reinstatement of the credit points earned (but subsequently cancelled) during his tenure at Level 3. He fails, however, to refute the Department’s claim his promotions were erroneously granted or demonstrate how the Department’s correction of an error violates the ex post facto provisions of the Constitution. While he claims he was given an “override” in 1997, and several times thereafter, there is no documentation to that effect as required by the 1997 policy. Other than the fact he was repeatedly (and apparently erroneously) promoted to Level
3, he has presented no probative evidence, by affidavit or otherwise, that his misconduct points were dropped or that the promotion was, of itself, a waiver. Henderson argues documentation was not required in 1994 and therefore its absence does not mean his misconduct points were not dropped. His argument attempts to reallocate the burden of proof. Henderson is required to show waiver. The obvious purpose of the 1997 policy change was to prevent a presumption of waiver from a silent record, the very thing Henderson seeks to do. Since there is no evidence of a waiver and no inference to be drawn in Henderson’s favor, the summary judgment was properly granted.
The district court did not address Henderson’s due process claim despite his objection that the claim was also ignored by the magistrate judge. Similarly, the Department failed to brief the merits of the due process claim on appeal. However, I fail to see how he was denied due process. Every policy since 1994 has required the absence of misconduct points as a predicate for promotion to Level 3 or 4. Each policy leaves a waiver to the Department’s discretion; the policies contain no guarantee an inmate’s misconduct points would be automatically dropped nor do they specify criteria controlling the exercise of discretion. On these facts there is no state created liberty interest entitled to due process protection. See Sandin v. Conner, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995).
I would affirm the result ordained by district court’s judgment.

. The change permits a proper and considered waiver (dropping points) to be distinguished from an administrative error.

. Dropped points and waiver (of the rule preventing promotion with active security misconduct points) are synonymous.

. Henderson filed his claim in 2002 and relies solely on the 1997 and 2000 policies. Because Henderson has not made a claim under the 2003 policies there is no reason to address the possible ramifications of that change.

. Deference is due to the affidavit of Mr. Knowles but is not conclusive. Smith v. Scott, 223 F.3d 1191, 1195 (10th Cir.2000). Nevertheless, to avoid summary judgment Henderson was required to produce admissible evidence demonstrating a genuine issue of material fact on that issue. Rule 56(c), Fed. R.App. P. He did not.