FILED
United States Court of Appeals
Tenth Circuit

November 4, 2014

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

RONALD ARTHUR GILBERT,

Petitioner - Appellant,

v.

MORGAN COUNTY DISTRICT
COURT (PROBATION
DEPARTMENT); THE ATTORNEY
GENERAL OF THE STATE OF
COLORADO,

Respondents - Appellees.

No. 14-1206
(D.C. No. 1:14-CV-00271-RPM)
(D. Colo.)

**ORDER DENYING CERTIFICATE OF APPEALABILITY**[*]

Before **LUCERO**, **TYMKOVICH**, and **PHILLIPS**, Circuit Judges.

A Colorado jury convicted Ronald Gilbert of two counts of sexual misconduct: first,

for unlawful sexual contact on T.L., an at-risk victim, and second, for unlawful sexual

contact on C.L. The Colorado Court of Appeals (CCA) affirmed. Gilbert filed a petition

for habeas relief under 28 U.S.C. § 2254, complaining of two errors. First, Gilbert

asserted that the trial court violated the Confrontation Clause when it prohibited him from

fully cross-examining two witnesses. Second, Gilbert argued that the CCA violated the

---

[*] This order is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Ex Post Facto Clause when it refused to require the trial court to make specific findings as required by a state statute. The district court denied relief.

Gilbert now wishes to challenge the district court's decision.[1] But before he may do so, he must obtain a certificate of appealability (COA). *See* 28 U.S.C. § 2253(c)(1)(A). We may issue a COA only if the petitioner makes a "substantial showing of the denial of a constitutional right." § 2253(c)(2). That showing requires a petitioner to demonstrate that reasonable jurists could debate whether his petition should have been resolved differently. *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). We conclude that Gilbert has failed to make that substantial showing. Exercising jurisdiction under 28 U.S.C. §§ 1291 and 2253(a), we DENY his request for a COA and DISMISS this appeal.

## BACKGROUND

In September 2008, Gilbert stopped his van and called out to T.L., who is mentally disabled, and asked him several times if he wanted a ride. After initially declining, T.L. agreed to take a ride, telling Gilbert that he was looking for work. Soon afterward, Gilbert grabbed T.L.'s groin, saying "I want some of this." Appellant's App. at 11 (citing *People v. Gilbert*, No. 10CA2670, at *1 (Colo. Ct. App. April 11, 2013) (unpublished)). T.L. asked that Gilbert let him out of the van, and Gilbert did so.

About a year later, in August 2009, Gilbert stopped his van and called out to C.L., asking him if he needed work. C.L. responded that he did and got into the van. Gilbert arranged to pick up C.L. at his house thirty minutes later. After doing so, Gilbert put his

---

[1] We construe Gilbert's appeal as a request for a Certificate of Appealability. *See* Fed. R. App. P. 22(b)(2).

hand on C.L.'s knee, moved his hand up his thigh, and touched his groin. Gilbert asked, "Do you like that?" Appellant's App. at 11. C.L. replied that he did not and asked Gilbert to drive him home, which he did. After getting away from Gilbert, C.L. called police. When Gilbert was arrested, he made incriminating statements to the arresting officer.

On the day trial was to begin, the state requested a continuance under Colo. Rev. Stat. § 18-1-405(6)(g)(I), informing the trial court that a material witness—the deputy who had arrested Gilbert—recently had lapsed into a diabetic coma and was hospitalized in intensive care. The state needed the deputy to testify about Gilbert's incriminating statements upon arrest. After learning that the deputy might soon be released from intensive care (although not necessarily the hospital), the court sent the sheriff to the hospital to get more precise information. Upon returning, the sheriff reported that his deputy was "not lucid at all." Appellant's App. at 16. The prosecutor then opined that "[at] this point, I don't believe he's going to be [lucid] in the next few days." *Id.*

Faced with this situation, the court granted the state's motion for continuance, resetting trial to start in about three and a half months. In doing so, the court generally and impliedly found that there was good cause for the continuance, and the deputy's unavailability was unavoidable and unenforceable.

At trial, C.L. testified about Gilbert's sexual assault, and Gilbert sought to impeach his credibility by cross-examining him about a previous forgery adjudication against him. Responding to the state's objection that C.L. committed the forgery as a juvenile, Gilbert clarified that he did not seek to introduce the juvenile adjudication itself, but instead

- 3 -

merely the prior bad act. The court prohibited the impeachment, and Gilbert did not argue that doing so violated his right to confront witnesses against him.

Also at trial, after a vague reference by T.L. that Gilbert understands to be about an unrelated prior sexual encounter of some sort, Gilbert sought to cross-examine T.L. about that supposed encounter. The trial court prohibited Gilbert from asking such questions— this time over his objection—finding it impermissible under Colorado's rape-shield statute, Colo. Rev. Stat. § 18-3-407 (2012). Ultimately, the jury convicted Gilbert on both counts—unlawful sexual contact of T.L., an at-risk victim, and one count of unlawful sexual contact of C.L. The trial court sentenced Gilbert to four years of intensive supervised probation.

Gilbert appealed to the Colorado Court of Appeals. In an unpublished opinion, the CCA affirmed. That court first concluded that the trial court did not violate Gilbert's right to a speedy trial when it granted a continuance. The CCA noted that, although the trial court failed to make an explicit finding under § 18-1-405(6)(g)(II), the record demonstrated that the court had enough information to reasonably conclude that the hospitalized deputy would be able to testify at a later date. The CCA also concluded that the trial court did not abuse its discretion by excluding C.L.'s forgery and T.L.'s supposed prior unrelated sexual encounter. The Colorado Supreme Court denied certiorari.

Gilbert then filed an application for habeas corpus relief in federal district court under 28 U.S.C. § 2254. He argued that the CCA's refusal to require the trial court to make specific findings under § 18-1-405(6)(g)(II) amounted to an ex post facto judicial modification of that statutory requirement. He also argued that the trial court violated his

rights to due process and confrontation by prohibiting him from impeaching C.L. with his prior bad act of forgery (as opposed to impeaching him with the juvenile adjudication of forgery itself) and from inquiring into T.L.'s nonresponsive, single-utterance supposedly about his recollection of an earlier, unrelated sexual encounter.[2]

In a brief, two-page order, the federal district court denied relief after considering each issue on the merits. Addressing Gilbert's speedy trial/ex post facto claim, the federal district court concluded that he didn't present a claim under the U.S. Constitution because he merely asserted "that the Colorado Court of Appeals revised previous law concerning the state statute." Appellant's App. at 6. Addressing the confrontation claim, the district court concluded that the trial court didn't abuse its discretion when it prohibited Gilbert from questioning C.L. about the forgery and T.L. about a supposed prior sexual encounter. The district court found neither a confrontation nor a due process violation.

## DISCUSSION

**Standard of Review**

A petitioner is required to obtain a COA before he can appeal the denial of any final order in a habeas corpus proceeding. 28 U.S.C. § 2253(c)(1). To receive a COA, a petitioner must make a "substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). A petitioner must demonstrate that reasonable jurists could debate whether the petition should have been resolved in a different manner or that the issues presented

---

[2] The question Gilbert's counsel posed was whether Gilbert's groping had hurt, and the first answer was yes, "[b]ecause I have had that happen before," and upon an immediate follow-up question about why Gilbert's groping had hurt, T.L. said, "[b]ecause it pinched." Appellant's App. at 29.

were adequate to deserve encouragement to proceed further. *Miller-El*, 537 U.S. at 336. As here, where a state court has decided a petitioner's claims on the merits, we must defer to that decision. *Dockins v. Hines*, 374 F.3d 935, 938 (10th Cir. 2004); 28 U.S.C. § 2254(d).

Thus, Gilbert must show that the CCA's adjudication of his claims "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). The state court's factual findings are presumed to be correct unless rebutted by clear and convincing evidence. *Hooks v. Workman*, 689 F.3d 1148, 1164 (10th Cir. 2012). We review de novo the district court's legal analysis of the state court decision. *Id.* at 1163.

**Speedy Trial/Ex Post Facto**

While acknowledging that the state trial court didn't make specific findings of good cause for the continuance under Colo. Rev. Stat. § 18-1-405(6)(g)(1), the CCA said that the trial court had found that there was good cause and that the underlying need for the continuance was unavoidable and unforeseeable. Appellant's App. at 16–17. After learning the underlying facts relating to the deputy's unavailability as a witness, the trial court had the clerk tell the jurors that "one of the witnesses has been hospitalized and won't be available for several days." *Id.* at 17. Accordingly, although the CCA acknowledged the lack of "an explicit finding" of reasonable grounds to believe the

deputy would later be available to testify, the CCA concluded that "the prosecutor supplied the court with sufficient information from which the court could reasonably conclude that [the deputy] would be available at a later trial date." Appellant's App. at 17. In that circumstance, the CCA concluded that the district court had not abused its discretion by continuing the trial date.

In support of his habeas application, Gilbert maintained that the CCA violated the Ex Post Facto Clause by "depriv[ing] one charged with a crime of any defense available according to law at the time when the act was committed." *See Dobbert v. Florida*, 432 U.S. 282, 292 (1977) (citations omitted). He contends that the CCA's decision in his case violated the federal Ex Post Facto Clause because the CCA modified the Colorado statute requiring that a trial court make specific findings when granting a trial continuance.

We agree with the district court that Gilbert's ex post facto claim is unreviewable in a federal habeas proceeding.[3] The CCA's opinion, if anything, interpreted the procedural language in the speedy trial statute authorizing a trial court to grant a continuance when a witness is unavailable. *See* Appellant's App. at 13–18 (citing *Gilbert*, No. 10CA2670, at *3–8; Colo. Rev. Stat. § 18-1-405(6)(g)(II)). Here, the CCA essentially concluded that a trial court need not make explicit findings that a witness would later be available to testify if the record shows that the trial court had sufficient information from which to

---

[3] We believe that the district court mischaracterized the issue as one involving solely state law when it concluded that Gilbert did not present a federal ex post facto claim. Despite the deference we give to the CCA's decision on the merits, *see Dockins*, 374 F.3d at 938, whether a state law is properly characterized as falling under the Ex Post Facto Clause is a federal question we determine for ourselves. *See Smith v. Scott*, 223 F.3d 1191, 1195 (10th Cir. 2000). Nevertheless, we still believe that reasonable jurists could not debate the correctness of the district court's decision.

make sufficient findings. Appellant's App. at 17 (citing *Gilbert*, No. 10CA2670 at *7). *Cf. People v. Hernandez*, 829 P.2d 392, 393 (Colo. Ct. App. 1991) (reversing conviction because the trial court made no findings whatsoever to support a continuance).

Even though a procedural change may work to the disadvantage of a defendant, such a change does not amount to an ex post facto violation. *Dobbert*, 432 U.S. at 293–94 (concluding that post-crime procedural changes in death penalty sentencing—including one allowing the judge to overrule a jury's recommendation of life imprisonment—were not ex post facto violations because they "merely altered the methods employed in determining whether the death penalty was to be imposed; there was no change in the quantum of punishments attached to the crime."). We therefore conclude that Gilbert is not entitled to a COA on this issue because he has not made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).

**Confrontation Clause**

Gilbert also argues that the trial court denied him the right to confront witnesses under the Sixth Amendment of the U.S. Constitution because it improperly excluded evidence of C.L.'s juvenile adjudication and a supposed past sexual encounter of T.L.'s. The district court concluded that the trial court's use of its discretion to exclude the testimony did not establish a Confrontation Clause violation. We agree that Gilbert has not made a substantial showing of the denial of a constitutional right.

*C.L.'s Juvenile Adjudication*

Gilbert argues that the trial court violated his right to confront witnesses when it excluded the bad-act evidence about C.L.'s forgery when he was a juvenile. He contends that the CCA's affirmance was contrary to clearly established federal law found in *Davis v. Alaska*, 415 U.S. 308 (1974). A state court decision is contrary to clearly established federal law if (1) the state court applies a rule that contradicts the governing law set forth in Supreme Court cases, or (2) the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from that precedent. *House v. Hatch*, 527 F.3d 1010, 1018 (10th Cir. 2008) (internal quotation marks and alterations omitted).

The CCA's decision withstands each of these conditions. The CCA did not apply a rule contradicting Supreme Court precedent, and the facts in Gilbert's case are distinguishable from those in *Davis.* In *Davis*, the prosecution's key witness was a juvenile who, in his testimony, identified men he had encountered at the roadside near his home where law enforcement later found a stolen safe. *Davis*, 415 U.S. at 309–10. The juvenile witness was on probation for burglarizing two cabins. *Id.* at 311. The defense sought to cross-examine him about his potential bias—trying to shift suspicion from himself and avoid a possible probation revocation. *Id.* Relying on an Alaska statute guarding the confidentiality of juvenile records, the trial court disallowed the cross-examination. *Id.* The Supreme Court reversed, noting the difference between generally attacking credibility by introducing evidence of a prior crime versus more specifically attacking a witness's credibility by cross-examinations "directed toward revealing

possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand." *Id.* at 316.

Contrary to Gilbert's argument, *Davis v. Alaska* is not clearly established law of the Supreme Court supporting his entitlement to habeas relief. Unlike the specific cross-examination proposed to reveal bias in *Davis*, Gilbert's proposed cross-examination of C.L. was general impeachment based upon a prior bad act. Gilbert offers nothing to show that C.L. was on juvenile probation and had something to lose or gain by his testimony about Gilbert sexually assaulting him. Because of this difference, *Davis* offers Gilbert no help. Gilbert is mistaken in arguing that "the situation in *Davis* is identical to the situation presented in this case."[4] Appellant's Br. at 11.

*T.L.'s Purported Prior Sexual Activity*

Gilbert contends that the trial court and CCA both erred in disallowing further cross-examination about two portions of T.L.'s testimony. First, T.L. testified about physical pain associated with Gilbert's groping of him:

> Q (by Gilbert's Counsel): Now when he grabbed you, did that hurt?
>
> A: Yes.
>
> Q: Tell me why.
>
> A: Because I have had it happen before.
>
> Q: I'm just going to ask you: Why did it hurt?

---

[4] In view of this conclusion, we need not address Gilbert's argument about whether any error was harmless under *Delaware v. Van Arsdall*, 475 U.S. 673 (1986).

A:  Because it pinched.

Appellant's App. at 28-29.

Later, T.L. testified about what he had done after Gilbert sexually assaulted him.

Q: And when you called Jody [his case manager], did you tell her what happened?

A:  Yeah, I told her I was mad.

Q:  Why were you mad?

A:  Because I felt like I did something that I shouldn't have. I thought it was my fault.

Q:  What was your fault?

A:  I thought I allowed it, but I didn't.

Q:  Why would you think that?

A:  That's just the way I thought it in my head.

Q:  So you were upset and you called her?

A:  Yeah, and I called Carrie.

Q:  Carrie and Jody. Who called the police?

A:  I did.

Q:  So you called the police?

A:  Yes.

Q:  Why did you call the police?

A:  To tell them what happened.

*Id.* at 31.

- 11 -

From these two portions of T.L.'s testimony, Gilbert now makes this overblown claim:

> The alleged victim clearly indicated that he initially believed that he had done something to consent to the contact, but in discussing this with others he had been convinced that he had not. T.L. indicated that he had been reminded of another incident and that his experiences in that incident had colored his perceptions during the events in question.

Appellant's Br. at 13.

We find no basis for the unjustified leaps Gilbert takes in summarizing T.L.'s testimony to reach this conclusion. Nowhere does T.L. testify that some other person pinched his groin and caused pain—the pinching could come in different ways than a sexual assault. And nowhere does T.L. say that an earlier sexual assault incident colored his perceptions about Gilbert sexually assaulting him. Further, T.L.'s testimony doesn't show that he thought he had consented to the sexual assault, but that others later had convinced him otherwise.[5] He simply could have meant that he originally blamed himself for getting into Gilbert's van. Even if Gilbert's characterization of T.L.'s testimony was fair, we would still agree with the state trial court that the Colorado Rape Shield law, Colo. Rev. Stat. § 18-3-407, would apply.

---

[5] The trial court not only concluded that Gilbert's counsel's question about T.L.'s purported prior incident fell under the rape shield statute, but also that T.L.'s vague statement didn't even open the door to further questioning. Trial Tr. 151:19–153:10 (Aug. 24, 2010). Gilbert's counsel cited this passage in his direct appeal brief, which he included as an exhibit in the initial application for habeas relief to the federal district court. *Gilbert v. Morgan Cnty. Dist. Ct.*, No. 1:14-CV-00271-RPM, Doc. No. 2-1, at *18–19. He failed to include that portion of the trial transcript in the Appendix he submitted to this Court.

Moreover, we disagree with Gilbert that the Colorado rape shield statute is unconstitutional as applied to him "because the issue did not materialize until trial and the only procedures permitted by the statute required the filing of the motion and supporting documents 30 days prior to trial." Appellant's Br. at 14 (citing Colo. Rev. Stat. § 18-3-407(2)). In fact, the Colorado statute provides a procedure when the evidence is made available at trial, but Gilbert did not follow it. *See* § 18-3-407(2)(d) (permitting an in camera hearing if evidence first becomes available at trial or for good cause shown).

The CCA concluded that the trial court's exclusion of this evidence did not violate the Confrontation Clause. Its decision was not contrary to clearly established federal law.

## CONCLUSION

Gilbert has not made a substantial showing that he has been denied a constitutional right. We deny a certificate of appealability and dismiss this appeal.

ENTERED FOR THE COURT


Gregory A. Phillips
Circuit Judge